UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
GARY EDELMAN,

                              Plaintiff,

                                                MEMORANDUM & ORDER
                                                18-CV-2143(JS)(AKT)

        -against-


UNITED STATES GOVERNMENT,
DEPARTMENT OF EDUCATION, BETSY DEVOS,
NAVIENT SOLUTIONS, STRADLEY RONON STEVENS
& YOUNG, GERARD DONOVAN,
                              Defendants.
---------------------------------x
APPEARANCES:
For Plaintiff:              Gary Edelman, <u>pro se</u>
                           1715 Union Avenue
                           Hewlett, New York 11557


For Defendants:
United States of America,   Richard Schumacher II, Esq.
Department of Education,     United States Attorney's Office
and Betsy DeVos *in her*    Eastern District of New York
*official capacity as*      610 Federal Plaza
*Secretary of Education*    Central Islip, New York 11722


Navient Solutions, LLC,     Francis X. Manning
Stradley Ronon Stevens      Stradley Ronon Stevens & Young, LLP
& Young, LLP, and           457 Haddonfield Road, Suite 100
Gerard Donovan              Cherry Hill, New Jersey 08002


SEYBERT, District Judge:

        <u>Pro se</u> plaintiff Gary Edelman ("Edelman" or "Plaintiff")

commenced this action against defendants the United States

Government (the "Government"), the United States Department of

Education ("DOE"), Betsy Devos (in her official capacity as

Secretary of Education) ("Devos") (together with the United States

and DOE, the "Federal Defendants"), Gerard Donovan ("Donovan"),

1

Stradley Ronon Stevens & Young, LLP ("SRSY"), and Navient Solutions, LLC. ("Navient") (together with Donovan and SRSY, the "Non-Federal Defendants"; collectively with the Federal Defendants, the "Defendants"). Plaintiff's Second Amended Complaint ("SAC," D.E. 43) asserts numerous claims against the Non-Federal Defendants related to the servicing of his federal student loans, as well as a claim that the Federal Defendants colluded with the Non-Federal Defendants thereby violating federal and state law. Along with monetary damages, Plaintiff seeks an order directing Defendants to "remove all negative marking off Plaintiff's credit history" (SAC ¶¶263.a, 264.a); estopping future "harassment, defamation or threats to Plaintiff" ((SAC ¶¶263.b, 264.b); vacating DOE's decision that the loans are legally enforceable (SAC ¶264.c); and preventing wage garnishment and/or tax offsets (SAC ¶264.e).

Currently pending before the Court are the Federal Defendants' motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and the Non-Federal Defendants' motion to dismiss pursuant to Rule 12(b)(6). For the reasons set forth below, Defendants' motions are GRANTED.

2

BACKGROUND

I. Procedural History

  A. State Court Action

       This is not the first case involving Plaintiff and
Defendants.  On April 25, 2016, SRSY, on behalf of Donovan, an
employee of Navient, filed a complaint against Plaintiff in Nassau
County Supreme Court alleging harassment due to Plaintiff's
voluminous phone calls and internet postings regarding Donovan.
(See, State Compl. dated Apr. 25, 2016, Ex. A, D.E. 58-2, attached
to Decl. of Francis X. Manning, D.E. 58-1.[1])  Through counsel,
Edelman filed counterclaims against Donovan alleging harassment
and interference with his ability to have his loans serviced.
(Pl.'s Countercls., Ex. B, D.E. 58-3.)  On September 14, 2016,
Plaintiff's counterclaims were dismissed with prejudice.  (Sept.
14, 2016 Dismissal Order, Ex. C, D.E. 58-4.)

       As to Donovan's claims against Plaintiff, the parties
negotiated a settlement memorialized in a consent judgment entered
on August 3, 2017.  (Aug. 3, 2017 Consent J., Ex. D, D.E. 58-5.)
Pursuant to the consent judgment: (1) Plaintiff agreed to remove
all his internet postings referencing Navient, its employees and
affiliates, including Donovan, and SRSY and its attorneys and

---

[1]  All Non-Federal Defendants' exhibits are attached to the
Manning Declaration, D.E. 58-1.  Hereafter, citation to those
exhibits will not reference the Manning Declaration.

employees (see id. at ¶ 2); and (2) Plaintiff was permanently enjoined from: (a) posting anything on the internet or otherwise publishing information concerning any of the parties with limited exceptions (see id. at ¶ 3), (b) contacting Donovan in any manner, or harassing, defaming or threatening him, and from interfering in his employment relationship with Navient (see id. at ¶¶ 4, 5); (c) communicating with Navient or any person employed by, or affiliated with Navient, with the limited exception regarding e-mail correspondence to Navient concerning legitimate inquiries regarding any of his student loans that were being serviced by Navient (see id. at ¶ 8); and (d) calling SRSY or any employees of SRSY (see id. at ¶ 7).

B. Instant Complaint

On April 11, 2018, Edelman filed a complaint in this Court against the Government (see D.E. 1) and, then, on July 3, 2018, he commenced a separate action against Navient, SRSY and Donovan (see D.E. 5 (Notice of Related Case)). On November 14, 2018, among other things, the Court ordered Plaintiff's two cases be consolidated. (Nov. 14, 2018 Elec. Order). Plaintiff filed an amended complaint against all Defendants on December 12, 2018. (D.E. 15.) Thereafter, he was permitted to file a Second Amended Complaint ("SAC") (see June 10, 2019 Elec. Order), which Edelman did on June 24, 2019. (See D.E. 43.)

On September 27, 2019, the Federal Defendants and the Non-Federal Defendants each moved to dismiss the SAC. (D.E. 54 ("Federal Dismissal Motion", D.E. 58 ("Non-Federal Dismissal Motion") (collectively, the "Dismissal Motions").) Plaintiff filed an omnibus opposition to the Dismissal Motions on October 28, 2019 (D.E. 62 ("Opposition")), and on November 8, 2019, the Federal Defendants and the Non-Federal Defendants filed their respective replies. (D.E. 63, 64.)

## II.   Factual Background[2]

Plaintiff's SAC raises thirty-eight counts related to his federal student loans, consisting of Federal Family Education Loans ("FFEL") and/or direct loans, which he obtained from the DOE between 2003 and 2011 to pay for his undergraduate and graduate

---

[2] The following facts are drawn from the SAC and are assumed to be true for purposes of this Memorandum and Order. In deciding a motion to dismiss, the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). As discussed infra, the Court also considers exhibits which are attached or integral to the SAC. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Additionally, a document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).

studies (hereafter, the "Loans").  (SAC 25-32, 98-99. [3])  With two exceptions,[4] the Loans were guaranteed by the DOE.  (SAC 100-01.)

Pursuant to its contract with the DOE, Navient services federal student loans on behalf of the Government, including Plaintiff's Loans.  (SAC 37-38, 125-27.)  According to Plaintiff, as a loan servicer, Navient is responsible for managing borrowers' accounts; processing monthly payments; assisting borrowers' enrollment in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.  (SAC 75-78.)

A. Alleged Conduct of the Non-Federal Defendants

Plaintiff's action is based on Navient's alleged refusal to service his Loans and claims that SRSY, Navient, and Donovan harassed and threatened Plaintiff.  Plaintiff claims that issues first arose with Navient when it placed unauthorized forbearances on his account on March 5, 2012 and August 20, 2012.  (SAC 195-98, 241-42.)  Then, on October 30, 2014, Plaintiff was instructed by Donovan, an employee in Navient's Office of Corporate Security, that due to his voluminous and frequent calls to Navient, any

---

[3] Because the paragraph numbers of Plaintiff's SAC are out of sequence, in the interest of clarity, the Court cites to the numbered lines of Plaintiff's SAC.

[4] The two excepted loans were guaranteed by the New York Higher Education Services Corporation (the "HESC") but are now owned by the DOE.  (SAC 101-02.)

inquiries Plaintiff had regarding his Loans should be directed solely to Donovan.  (SAC 42-45; Ex. A, ¶¶ 2, 10, 11.)  Plaintiff claims that Donovan provided Plaintiff with his (Donovan's) personal mobile number which he "falsely presented as a Navient business," and at times serviced Plaintiff's Loans via telephone. (SAC 42-45, 107-09.)

Plaintiff further alleges that at some point SRSY was hired by Navient to handle the servicing of Plaintiff's Loans.  (SAC 39-41.)   According to the SAC, Donovan, Navient and SSRY did not provide Plaintiff with a toll-free number to service his Loans and failed to respond to his voicemails and emails requesting loan information.  (SAC 149-50, 154-56, 162-63, 658-59.)

In 2014, Plaintiff's Loans went into default, and the Non-Federal Defendants continued with the servicing of his Loans.  (SAC 114-17.)  Plaintiff allegedly filed a complaint against Navient with state senators on October 30, 2014.  (SAC 246-47.)  According to Plaintiff, shortly thereafter, Navient "initiated a campaign of harassment and intimidation directed at Plaintiff."  (SAC 250-51.)  Then, in 2015, Plaintiff filed a complaint with the Attorney General.  (SAC 256-57.)  He claims that Navient misinformed the DOE, the HESC, and the Attorney General that the unauthorized forbearance placed on his account had been removed.  (SAC 199-210, 262-63, 266-68.)  On November 27, 2014, Plaintiff requested that

Navient provide him with its payment methods and fees, but it failed to respond.  (SAC 272-74.)

Plaintiff claims that in December 2014, Donovan's behavior towards him caused Plaintiff to contact state and county police because he feared for the safety of his family.  (SAC 286-89.) Plaintiff alleges that after he complained to the Consumer Financial Protection Bureau, Navient and SRSY "went on a campaign of DOXXing" him.[5]  (SAC 310-27.)  He claims that Navient continued to defame him, refused to provide him with a toll-free number or accept payments, and had "legal" handle his Loans in violation of the Higher Education Act ("HEA").  (SAC 306-08, Ex. 6.)  Plaintiff alleges that in April 2015, both Navient and SRSY provided him with phone numbers that "fraudulently portrayed" themselves as the DOE.  (SAC 331-40.)

Plaintiff claims that in July and September 2015 he sent Navient deferment requests which Navient refused to process stating that his account was "on freeze" and "should not be serviced."  (SAC 342-49, 443-44.) Plaintiff claims that the DOE

---

[5]  "Doxxing" is a slang term referring to "publicly identify[ing] or publish[ing] private information about (someone) especially as a form of punishment or revenge."  *Merriam-Webster.com Dictionary*, Merriam-Webster, (Nov. 24, 2020), https://www.merriam-webster.com/dictionary/dox; see also Harry Bruinius, The Christian Monitor, Feb. 5, 2015 (describing "doxxing" as "the troll harassment technique of finding and then posting a user's sensitive personal information, including addresses, phone numbers, and even Social Security numbers").

inquired about the freeze but that Navient denied Plaintiff's account was frozen. (SAC 356-57.) He also claims that he sent five payments to Navient in 2016 but that it refused to process them. (SAC 445-47.)

Plaintiff alleges that neither SRSY, Donovan, nor Navient responded to Plaintiff's June 3, 2017 request for loan service. (SAC 467-70.) He claims that Navient later denied having any knowledge of Donovan or SRSY servicing his Loans, and that SRSY told him that it had nothing to do with his Loans. (SAC 472-77.) Allegedly on June 6, 2017, Donovan and his SRSY attorney stated that all servicing of Plaintiff's Loans should go through Donovan. (SAC 483-84.) Plaintiff claims that he later learned that all his Loans had been transferred from Navient to SRSY in April. (SAC 486.)

Plaintiff further alleges that at some point Navient sent Plaintiff a letter withdrawing SRSY from servicing his Loans but, nonetheless, that SRSY continued to harass him. (SAC 402-04.) He claims that an SRSY attorney demanded that he provide SRSY with a photo of his eight-year-old niece (SAC 393-96), and that another SRSY attorney threatened to fabricate stories to law enforcement, including reporting Plaintiff's firearms as stolen. (SAC 459-62.) Plaintiff alleges that Navient and SRSY bragged to Plaintiff about their "hacking" abilities and "went on a campaign of 'swatting,'

which included making it appear that Plaintiff's house alarm was going off and having the police respond." (SAC 427-30.)

In 2018, Plaintiff filed another complaint with the Consumer Financial Protection Bureau about Navient's behavior. (SAC 510-11.)  Plaintiff claims that despite Navient's claim that his Loans defaulted in April 2017, they really defaulted years earlier. (SAC 691-93.)  He alleges that on December 3, 2018, an SRSY attorney "threatened to falsely accuse Plaintiff of sending letters to [Donovan's] former employers when they were actually created and mailed by Defendants themselves." (SAC 726-25.) Plaintiff contends that Navient published false statements to federal agencies regarding his Loans, including that Navient never refused payments, blocked his phone calls, or provided access to a toll-free number. (SAC 648-57.)

B. Federal Defendants' Alleged Conduct

As to the DOE, Plaintiff claims that the DOE: colluded with Navient to cover up Navient's charging of illegal fees (SAC 275-82); inquired about Navient's refusal to provide fee information to Plaintiff but then, on June 18, 2015, assisted Navient in "cover[ing] up their fraudulent behavior" (SAC 275-79), and in their "shake down" (SAC 524-26); defamed him by stating that Plaintiff was fabricating SRSY's role in the servicing of his loans (SAC 409-10); published information to third parties which defamed his character and colluded with Navient in providing incorrect

10

information in Navient's reports.  (SAC 225-28.)  On November 5, 2017, "a portion of [P]laintiff's loans were in default and an official appeal was submitted to the DOE." (SAC 532-34.)  According to Plaintiff, his appeal to the DOE was "not accepted," and his FOIA requests to the DOE were "not fulfilled, except for [one] appeal." (SAC 569-75.)  Plaintiff alleges that he filed complaints against the DOE with the U.S. Attorney General, the Inspector General, and the Consumer Financial Protection Bureau.  (SAC 546-47.)

Plaintiff further alleges that: at some point, he entered into a repayment agreement with the DOE but it failed to comply with its terms, refusing to accept payments (SAC 579-82); the DOE failed to ensure the accuracy of the information it submitted to Navient, credit reporting agencies, the HESC, and the Consumer Financial Protection Bureau (SAC 604-07); the DOE certified Plaintiff for tax offset and/or wage garnishment without providing an in-person hearing (SAC 608-12); in 2018, the DOE purchased his two HESC loans but incorrectly marked at least one of them as having "completed" the rehabilitation program, but refusing to correct that inaccuracy (SAC 614-15, 618-22); the DOE's actions denied him the opportunity to "rehabilitate" his loans, which would have removed collection costs and negative markings on his credit history (SAC 623-25).

<u>DISCUSSION</u>

I.   <u>Standard of Review</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists.  <u>Id.</u>  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court "may consider evidence outside the pleadings."  <u>See</u> <u>Morrison v. Nat'l Austl. Bank, Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, 561 U.S. 247 (2010) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  (internal quotation marks and citation omitted).  To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>  The Court's plausibility determination is a "context-specific

12

task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). See also Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015) (noting that the dismissal of a pro se complaint pursuant to Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotation marks and citation omitted). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Id.

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint itself." Dechberry v. N.Y. City Fire Dep't, 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by

reference, are integral to the complaint." Sira, 380 F.3d at 67 (internal quotation marks and citations omitted.)

A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." Chambers, 282 F.3d at 153 (emphasis omitted). Where an allegation in a complaint is contradicted by a document or exhibit attached to the complaint, the document controls and the allegation is not afforded the presumption of truth for purposes of a motion to dismiss. Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 146-47 (2d Cir. 2011) (citing L-7 Designs Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011)); Matusovsky v. Merrill Lynch, 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002).

## II. Claims Against Federal Defendants

Federal Defendants contend that the claims against them should be dismissed in their entirety principally on the ground that this Court lacks subject matter jurisdiction. They argue that because Plaintiff's claims all stem from an alleged breach of contract with the Government and seek more than ten thousand dollars in monetary damages, only the Court of Federal Claims has jurisdiction. (Fed. Defs.' Br., D.E. 56, at 2-3 (citing 28 U.S.C. § 1491(a); 28 U.S.C. § 1346(a)(2)).) Alternatively, Federal Defendants argue that Plaintiff's claims should be dismissed

pursuant to Federal Rule 12(b)(6) for failure to state a claim for which relief may be granted.  (Id. at 4, n.1.)

For the reasons discussed below, this Court dismisses Plaintiff's claims against the Federal Defendants.

A.  Subject Matter Jurisdiction

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  Claims asserted against agencies of the Government or federal officers in their official capacities are considered to be asserted against the United States and are also barred under the doctrine of sovereign immunity.  See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).  Thus, Plaintiff must show that his claims invoke one of the areas where Congress has waived sovereign immunity or his action against the Federal Defendants is precluded. De La Mota v. U.S. Dep't. of Educ., No. 02-CV-4276, 2003 WL 21919774, at *4 (S.D.N.Y. 2003) ("The general federal question jurisdiction statute, 28 U.S.C. § 1331, is in no way a general waiver of sovereign immunity.") (internal quotation and citation omitted), rev'd on other grounds, 412 F.3d 71 (2d Cir. 2005).  Although Plaintiff's SAC fails to specify the basis for a waiver of the Federal Defendants' sovereign immunity, because of his pro se status, the Court will consider whether there is immunity.

1. Tucker Act

Federal Defendants claim that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 et seq.  The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over, inter alia, "any claim against the United States founded ... upon any express or implied contract with the United States" in excess of $10,000.  28 U.S.C. § 1491(a)(1).  Additionally, in order to provide an entire remedy and to complete the relief afforded by a money judgment, the Tucker Act provides the Court of Claims with authority to issue equitable orders as "an incident of and collateral to" such money judgment.  See 28 U.S.C. § 1491(a)(2).

Here, Plaintiff's SAC contains sixteen counts against the Federal Defendants and seeks over $700,000 in damages.  Among Plaintiff's claims, he alleges that the "DOE breached the contract established with Plaintiff by failing to properly service the federal student loans."  (SAC 1628-29.)  Pursuant to the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over Plaintiff's breach of contract claim.  Accordingly, Plaintiff's breach of contract claim is DISMISSED without prejudice for lack of subject matter jurisdiction.

To the extent Federal Defendants contend that Plaintiff's remaining claims should also be dismissed for lack of subject matter jurisdiction, or in the alternative, for failure to

16

state a claim, the Court will address each of Plaintiff's remaining claims in turn.[6]

## 2. Federal Trade Commission Act

Plaintiff purports to bring a claim under 15 U.S.C. § 45(a) of the Federal Trade Commission Act (the "FTC Act"), based upon the Federal Defendants' involvement with Navient's alleged unfair and deceptive practices regarding servicing Plaintiff's loans. Section 45(a) of the FTC Act makes it unlawful to engage in unfair methods of competition and unfair and deceptive acts affecting commerce. 15 U.S.C. § 45(a). However, the FTC Act is only subject to enforcement by the Federal Trade Commission and does not provide for a private cause of action. See Hourani v. Wells Fargo Bank, N.A., 158 F. Supp. 3d 142, 148 (E.D.N.Y. 2016) (finding no statutory basis for a private right of action under the FTCA) (citing Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 237 (2d Cir. 1974)). Therefore, Plaintiff's FTC Act claim against the Federal Defendants is DISMISSED with prejudice.

---

[6] For the first time, in his opposition, Plaintiff contends that this Court has subject matter jurisdiction over his claims pursuant to the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 et seq. (See Pl.'s Br., D.E. 62, at 2.) Though a plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendant['s] motion to dismiss," K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013), the Court notes that the HEA does not provide a private right of action for student borrowers. Wimberly v. U.S. Dep't of Educ., No. 12-CV-7773, 2013 WL 6123172, at *2 (S.D.N.Y. Nov. 21, 2013); Nehorai v. U.S. Dep't of Educ. Direct Loan, No. 08-CV-920, 2008 WL 1767072 at *1 (E.D.N.Y. Apr. 14, 2008).

### 3. Consumer Financial Protection Act

Plaintiff also has no claim under the Consumer Financial Protection Act ("CFPA"), which provides that "[i]f any person violates a Federal consumer financial law, the [Consumer Financial Protection Bureau] may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 15 U.S.C. § 5564(a). Thus, since the CFPA authorizes only the Consumer Financial Protection Bureau to bring claims under the statute, Plaintiff is foreclosed from privating maintaining such an action. See Fraser v. Aames Funding Corp., No. 16-CV-0448, 2017 WL 564727, at *4-5 (E.D.N.Y. Jan. 24, 2017) (finding no statutory basis for a private right of action under the CFPA); Nguyen v. Ridgewood Sav. Bank, No. 14-CV-1058, 2015 WL 2354308, at *11 (E.D. N Y. May 15, 2015) (same). Accordingly, Plaintiff's CFPA claim against the Federal Defendants is DISMISSED with prejudice.

### 4. Constitutional Claims

Plaintiff's SAC asserts due process claims pursuant to the Fifth and Fourteenth Amendments against the Federal Defendants. (SAC 1692-728). He subsequently voluntarily withdrew his constitutional claims against the Government and the DOE, but not as to DeVos. (See Pl.'s Opp. at 3.) However, Edelman's constitutional claims against DeVos must be dismissed for lack of

subject matter jurisdiction, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States[; thus], such suits are barred under the doctrine of sovereign immunity unless such immunity is waived." Robinson, 21 F.3d at 510 (citing Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484 (1994)). Here, the Government has not waived sovereign immunity, thereby permitting the DOE to be sued for damages for any alleged violation of Plaintiff's constitutional rights. Eiland v. U.S. Dep't of Educ., No. 10-CV-4131, 2011 WL 31537, at *3 (S.D.N.Y. Jan. 4, 2011) (citing Mignogna v. Sair Aviation, Inc., 937 F.2d 37, 40 (2d Cir. 1991)). Consequently, this Court lacks subject matter jurisdiction to consider Plaintiff's constitutional claims against DeVos as an officer of the Department of Education. Accordingly, Plaintiff's constitutional claims against DeVos are DISMISSED with prejudice.

### 5. Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA"), which regulates credit reporting procedures, codifies a consumer's right to dispute information reported to a credit agency by a furnisher of credit information. Crawford v. Duncan, No. 11-CV-3774, 2013 WL 1346382, at *3 (E.D.N.Y. Apr. 3, 2013) (citing 15 U.S.C. §§ 1681g(c)(1)(B)(iii), 1681i(a) (1)(A), 1681s-2(a)(8).) However, because the FCRA does not contain a clear and unequivocal waiver

of the Government's sovereign immunity, this Court is without subject matter jurisdiction to adjudicate Plaintiff's FCRA claims against the Federal Defendants. See Stein v. U.S. Dep't. of Ed., 450 F. Supp. 3d 273 (E.D.N.Y. 2020) (noting that though the Second Circuit has not ruled on the issue of whether the FCRA contains a waiver of sovereign immunity, "[a]n examination of FCRA's text reveals that it does not contain a waiver of the government's sovereign immunity."); see also Robinson v. U.S. Dep't of Educ., 917 F.3d 799 (4th Cir. 2019) (holding that the FCRA did not unambiguously and unequivocally waive DOE's sovereign immunity); Daniel v. Nat'l Park Serv., 891 F.3d 762 (9th Cir. 2018) (finding FCRA did not clearly waive sovereign immunity from suit). Accordingly, Plaintiff's FCRA claim against the Federal Defendants is DISMISSED with prejudice.

### 6. Federal Tort Claims Act

To the extent Plaintiff alleges claims against the Federal Defendants sounding in tort, the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity where suit is brought against the United States based upon torts committed by its officers. See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA.") (citing Rivera v. United States, 928 F.2d 592, 608-09 (2d

Cir. 1991)); 28 U.S.C. § 2679(b)(1).  However, "where a tort claim
stems from a breach of contract, the cause of action is ultimately
one arising in contract, and thus is properly within the exclusive
jurisdiction of the Court of Federal Claims to the extent that
damages exceed $10,000."  Awad v. United States, 301 F.3d 1367,
1372 (Fed. Cir. 2002)(upholding transfer of intentional infliction
of emotional distress claim to the United States Claims Court where
it was "inextricably intertwined with the government's supposed
breach")(citing Wood v. United States, 961 F.2d 195, 198 (Fed.
Cir. 1992) (upholding a transfer of the plaintiff's claims from
the district court to the United States Claims Court on the ground
that negligence and conversion claims could not establish a cause
of action in tort independent of the underlying contractual
relationship); Blanchard v. St. Paul Fire and Marine Ins. Co., 341
F.2d 351 (5th Cir. 1965) (holding that the plaintiff's claim
against the United States for negligence was not a tort claim
within the FTCA where it was founded upon an alleged failure to
perform explicit or implicit contractual obligations).

        To determine "whether the claims in a case are
contractual, the [c]ourt is to examine 'the source of the rights
upon which the plaintiff bases its claims, and . . . the type of
relief sought [.]'"  Champagne v. United States, 15 F. Supp. 3d
210, 221 (N.D.N.Y. 2014) (quoting Megapulse, Inc. v. Lewis, 672
F.2d 959, 968 (D.C. Cir. 1982)).  "If the right that the plaintiff

seeks to vindicate stems from no independent, non-contractual source, and the remedy for violating that right is a contractual remedy, then the claim arises out of a contract...” Id. (internal quotation marks omitted).

Here, Plaintiff asserts tort claims against the Federal Defendants for breach of fiduciary duty and intentional infliction of emotional distress. (SAC 1663-713, 1642-59.) Plaintiff's breach of fiduciary duty claim appears to allege that Federal Defendants owed Plaintiff a fiduciary duty “to act in a way which benefited [him]” with regard to “information related to Plaintiff's loans.” (SAC 1664-67.) Because the source of Plaintiff's claimed rights stem from a contract, i.e., the master promissory note (hereafter, the “Note”), his allegations are merely a restatement of Plaintiff's breach of contract claim. See Woodbury v. United States, 313 F.2d 291, 295 (9th Cir. 1963) (holding that a developer's claim for breach of fiduciary duty was actually a contract action properly brought in the Court of Claims).

Similarly, Plaintiff's intentional infliction of emotional distress claim is premised on the DOE's efforts in having the Loans serviced. (SAC 1644-48.) Such allegations are “inextricably intertwined” with the DOE's alleged breach of the loan agreement. See Awad, 301 F.3d at 1372. Moreover, both claims seek monetary damages, which is relief that is generally considered contractual.

22

See Champagne, 15 F, Supp. 3d at 221.  Therefore, the Court finds
that because Plaintiff's tort claims arise from his contract with
DOE, the FTCA's limited waiver of sovereign immunity is not
applicable in this instance.  Rather, this Court lacks subject
matter jurisdiction to adjudicate of Plaintiff's breach of
fiduciary duty and intentional infliction of emotional distress
claims warranting their DISMISSED with prejudice.

    7. <u>Administrative Procedure Act</u>

        Plaintiff's claims pursuant to the Administrative
Procedure Act ("APA") allege that the DOE: unilaterally withdrew
from a rehabilitation payment agreement (SAC 1759-73); failed to
process Plaintiff's dispute in a timely manner (SAC 1780-98); and,
denied Plaintiff's claims against Navient and SRSY (SAC 1832-56).
He seeks monetary damages and an order vacating the DOE's
certification that his loans are "legally enforceable." (SAC 1876-
86, 2020-21.)  As discussed below, this Court finds that it lacks
subject matter jurisdiction over Plaintiff's APA claims.

        The APA provides "a limited waiver of sovereign immunity
for suits seeking non-monetary relief against agencies and
officers of the United States." <u>Lipkin v. S.E.C.</u>, 468 F. Supp. 2d
614, 621 (S.D.N.Y. 2006).  In pertinent part, the APA provides
that a reviewing court shall set aside agency actions, findings,
and decisions that are "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law . . . [or] is

unsupported by substantial evidence." 5 U.S.C. § 706(2). However, "[o]nly after exhausting administrative remedies may a borrower seek judicial review of the Secretary's decision under the Administrative Procedure Act." Wimberly, 2013 WL 6123172, at *2; Lipkin, 468 F. Supp. 2d at 622 ("[T]he APA allows review only of 'final agency action for which there is no other adequate remedy in a court.'") (quoting 5 U.S.C. § 704.)  Thus, "[a] failure to first pursue administrative remedies will result in dismissal of the action." Wimberly, 2013 WL 6123172, at *2 (citing Shabtai v. U.S. Dep't of Educ., No. 02-CV-8437, 2003 WL 21983025, at *7 (S.D.N.Y. Aug. 20, 2003).

Relevant to the instant action, under the HEA, which governs federally-guaranteed student loans, a borrower seeking certain types of loan relief must normally avail himself of the administrative process outlined in 20 U.S.C. §§ 1071, et seq., and its governing regulations, 34 C.F.R. Part 682. See, e.g., Carlin v. CBE, No. 08-CV-1491, 2008 WL 2113255, at *1-2, n. 1 (E.D.N.Y. May 19, 2008) (citing Nehorai, 2008 WL 1767072, at *1).  Under this process, it is "[t]he Secretary of Education, not a district court that has the authority to discharge a loan guaranteed by the DOE." Id. at *1.  "If Plaintiff has properly sought such a discharge and is now dissatisfied with a decision made by the Secretary of Education, []he would be entitled to challenge the Secretary's decision by filing a claim for judicial review under

24

the [APA]." Nehorai, 2008 WL 1767072, at *1 (dismissing action
seeking cancellation of student loans because the plaintiff had
not alleged that she requested cancellation from the holder of the
loan); Shabtai, 2003 WL 21983025, at *7 (same).

Here, Plaintiff's APA claims fail for two reasons.
First, Plaintiff is not entitled to monetary relief pursuant to
the APA. See Lipkin, 468 F. Supp. 2d at 621. Second, regarding
his request for loan cancelation, Plaintiff alleges generally that
he "has exhausted all administrative processes and was advised by
[DOE] that his next and last step was to file a lawsuit in [f]ederal
[c]ourt." (SAC 235-37.) However, Plaintiff does not allege that
he complied with the applicable regulations governing the
procedures for a borrower seeking to cancel his federal student
loans. Therefore, since Plaintiff fails to allege a "final agency
action" regarding the cancellation of his Loans, he has not
satisfied his burden of establishing this Court's subject matter
jurisdiction over his APA claims. However, given Plaintiff's pro
se status, the Court will afford Plaintiff the opportunity to amend
his SAC addressing this deficiency in his pleadings, i.e., the
lack of allegations that he followed the applicable administrative
procedures governing the cancellation of his Loans if, in fact, he
followed said procedures. Accordingly, Plaintiff's APA claim is
DISMISSED without prejudice.

8. Freedom of Information Act

Plaintiff's SAC asserts that Federal Defendants violated the Freedom of Information Act ("FOIA") by unreasonably delaying the production of documents and refusing to provide updates about his FOIA requests.  (SAC 1802-03, 1737.)  Plaintiff does not request equitable relief ordering the disclosure of information; rather, he seeks monetary damages in the amount of $15,000.  (SAC 2031.)  However, the FOIA does not provide a private right of action for monetary damages.  See Diamond v. FBI, 532 F. Supp. 216, 233 (S.D.N.Y. 1981) (citing 5 U.S.C. § 552(a)(4)(B)), aff'd sub nom. 707 F.2d 75 (2d Cir. 1983).  Rather, the Act's remedy is limited to "enjoin[ing] the agency from withholding agency records and to order[ing] the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B). Accordingly, as the Court is precluded from granting the relief sought, Plaintiff's FOIA claims are DISMISSED with prejudice.

III. Claims Against Non-Federal Defendants

Non-Federal Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule 12(b)(6) for failure to state a claim. For the reasons that follow, the Non-Federal Defendants' motion is granted in its entirety.

A. <u>Claims Against Navient</u>

1. <u>FCRA</u>

Plaintiff alleges that Navient violated the FCRA, 15 U.S.C. § 1681 <u>et</u> <u>seq.</u>, by providing inaccurate information to credit reporting agencies and failing to conduct a reasonable investigation of the inaccuracies after Plaintiff disputed them. (SAC 836-47, 855-67.)  The FCRA permits a cause of action against a furnisher of credit information, like Navient, under limited circumstances.  Pursuant to 15 U.S.C. § 1681s-2(b) ("Section 1681s-2(b)"), a claim may be stated only if a plaintiff shows that: "(1) the furnisher [of information] received notice of a credit dispute <u>from a credit reporting agency</u>, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." <u>Nguyen v. Ridgewood Sav. Bank</u>, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) (internal citations and quotation marks omitted; emphasis added).  Notably, the furnisher's duty to investigate as set forth in Section 1681s-2(b) "is triggered only after a furnisher of information receives notice <u>from a credit reporting agency</u> of a consumer's dispute."  <u>Mendy v. JP Morgan Chase & Co.</u>, No. 12-CV-8252, 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014) (citing <u>Kane v. Guar. Residential Lending, Inc.</u>, No. 04-CV-4847, 2005 WL 1153623, at *5 (E.D.N.Y. May 16, 2005) (emphasis in the original).) Thus, to proceed under Section 1681s-2(b), Plaintiff is required "to show that the furnisher was told <u>by a credit reporting agency</u>

27

that the consumer's information was disputed, as opposed to being told by the consumer directly." Id. (citation omitted)(emphasis added).

Here, because he fails to plead that Navient received notification from a consumer reporting agency regarding the accuracy of information furnished by Navient, as required by Section 1681s-2(b), Plaintiff lacks standing to bring his FCRA claim. See, e.g., Prakash v. Homecomings Fin., No. 05-CV-2895, 2006 WL 2570900 at *3, 4-5 (E.D.N.Y. Sept. 5, 2006) ("[P]laintiff lacks standing to bring his claims under the Fair Credit Reporting Act" where "nowhere in the complaint or opposition to the instant motion does plaintiff allege that defendant [data furnisher] received notice of the dispute from a credit reporting agency.") Plaintiff merely alleges that he "disputed the accuracy of the derogatory information reported by the Defendant" and that "Defendant has not responded to Plaintiff's notice of dispute." (SAC 858-59, 864.)   Such allegations are insufficient to demonstrate that Navient received the requisite notification from a credit reporting agency that Plaintiff's information was disputed.   Thus, Plaintiff fails to allege facts which demonstrate that Navient's duty to investigate under Section 1681s-2(b) was triggered.   Therefore, because Plaintiff's SAC does not sufficiently allege facts to state a FCRA claim, the Court grants the Non-Federal Defendants' motion to dismiss Plaintiff's FCRA

claims against Navient, which claim is DISMISSED without prejudice.

    2. <u>CFPA</u>

As discussed <u>supra</u>, there is no private right of action under the CFPA.  <u>See</u> <u>Nguyen</u>, 2015 WL 2354308, at *11.  Accordingly, Plaintiff's CFPA claim against Navient is DISMISSED with prejudice.

    3. <u>Fair Debt Collection Practices Act</u>

Navient contends that the Fair Debt Collection Practices Act ("FDCPA") does not apply to it as it is not a debt collector under the statute.  The FDCPA was established to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors.  15 U.S.C. § 1692d(e).  "To establish a violation of the FDCPA, a plaintiff must satisfy three elements: (i) the plaintiff must be a consumer; (ii) the defendant must be a debt collector; and (iii) the defendant must have committed some act or omission in violation of the FDCPA."  <u>Allen v. United Student Aid Funds, Inc.</u>, No. 17-CV-8192, 2018 WL 4680023, at *4 (S.D.N.Y. Sept. 28, 2018), <u>reconsideration</u> <u>denied</u>, 2019 WL 4686529 (S.D.N.Y. Sept. 26, 2019) (internal quotations and citation omitted).  Indeed, "a defendant can only be held liable for violating the FDCPA if she is a 'debt collector' within the meaning of the [FDCPA]."  <u>Id.</u> (quoting <u>Feldman v. Sanders Legal Grp.</u>, 914 F. Supp. 2d 595, 599 (S.D.N.Y. 2012) (further citation omitted)).  The Act defines a

"debt collector" as a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."  15 U.S.C. § 1692a(6).  Explicitly excluded from that definition is "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." Id.  Thus, "[w]hen a loan servicer obtains an account prior to its default, that loan servicer operates as a creditor, not a debt collector, for the purposes of the FDCPA." Allen, 2018 WL 4680023 at *4 (citation omitted) (finding Navient was not a debt collector under the FDCPA when it began servicing plaintiff's loans prior to default).

Here, Plaintiff fails to establish that Navient is a "debt collector" pursuant to the FDCPA, having failed to plead any facts establishing that Navient acquired his Loans after they went into default.  Therefore, because Plaintiff has not plausibly alleged that Navient was a "debt collector" within the meaning of the FDCPA, his FDCPA claim is DISMISSED with prejudice.

4. Breach of Contract

Plaintiff claims that he is an "intended third-party beneficiary under the Servicing Contract" between the DOE and Navient (SAC ¶23-28) and, as such, is entitled to damages for Navient's alleged breach of its contract with the DOE. (SAC ¶37-

42.)  Plaintiff's claim is misplaced.  "Federal common law governs the interpretation of federal government contracts, such as . . . Servicing Contracts."  Travis v. Navient Corp., 460 F. Supp. 3d 269, 284 (E.D.N.Y. 2020) (citations omitted).  To apply "federal common law of contract," courts look to "general principles of contract law."  Id. (quoting Dobson v. Hartford Fin. Servs. Grp., Inc., 389 F.3d 386, 399 (2d Cir. 2004).  Pursuant to these principles, "absent a contractual relationship there can be no contractual remedy."  Id. (quoting Suffolk Cnty. v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984)).  A contractual relationship exists "if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract."  Id. (quoting Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n, 747 F.3d 44, 49 (2d Cir. 2014)).

"Proving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question."  Hyland v. Navient Corp., No. 18-CV-09031, 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019) (quoting Hillside, 747 F.3d at 49 (citation omitted)).  District courts in this Circuit have held that in the absence of express language in the servicing contract between the Government and a loan servicer, such contracts do not confer third-party beneficiary status on borrowers like Plaintiff.  See id. (dismissing breach of contract claim where plaintiffs "failed to identify any language in the

31

Servicing Contracts that clearly evidences an intent to permit enforcement" by the third-party borrower); Travis, 460 F. Supp. 3d at 284 (same).  "It is not enough that [plaintiff] incidentally benefit[s] from [Navient's] performance under the Servicing Contracts.  Such incidental benefit does not rise to the level of intent to permit enforcement."  Hyland, 2019 WL 2918238 at *8. Thus, as Plaintiff fails to identify any language in the servicing contract between the DOE and Navient evidencing an intent to permit enforcement by borrowers, he cannot claim that he is anything more than an incidental beneficiary.  As such, Plaintiff cannot allege a breach of contract claim against Navient.  Accordingly, Plaintiff's breach of contract claim is DISMISSED with prejudice.

   5. <u>Unjust Enrichment</u>

      "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  <u>Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.</u>, 448 F.3d 573, 586 (2d Cir. 2006) (quoting <u>Kaye v. Grossman</u>, 202 F.3d 611, 616 (2d Cir. 2000)). Notably, "[t]he theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates <u>in the absence of any agreement</u>." <u>Id.</u> (citation omitted) (emphasis in original). "The core of an unjust enrichment claim is that the defendant has received something that does not belong to it, and that rightly

32

belongs to the plaintiff." Hyland, 2019 WL 2918238, at *14.  A loan servicer's receipt of fees from the DOE for servicing student loans is not sufficient to state an unjust enrichment claim. See, e.g., id. (dismissing unjust enrichment claim where the only benefit allegedly retained by defendant was servicing fees paid by DOE); Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 537 (E.D.N.Y. 2015) (dismissing unjust enrichment claim premised on the assertion that "[b]y preventing plaintiff from making reduced monthly payments, defendant caused plaintiff's debt to increase, and further interest to accrue on the loan principal" because plaintiff was already obligated to make payments on his loan).  In light of the applicable case law, Plaintiff's conclusory allegations that he lost the benefit of an income-based repayment plan and accrued unpaid interest causing Navient to collect a substantially higher amount of loan servicing fees pursuant to its agreement with the DOE (SAC 965-66, 974-76) are insufficient to state a plausible claim of unjust enrichment.  Accordingly, Plaintiff's unjust enrichment claim is DISMISSED with prejudice.

 6. Breach of Fiduciary Duty

  The elements of a breach of fiduciary duty claim under New York law are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 390 (E.D.N.Y. 2014) (quoting Johnson v. Nextel Commc'ns, Inc., 660

F.3d 131, 138 (2d Cir. 2011) (citations omitted)).  A fiduciary relationship "exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him." Hyland, 2019 WL 2918238 at *10 (quoting People v. Coventry First LLC, 13 N.Y.3d 108, 115 (2009).  Moreover, the general rule is that no fiduciary duty exists between a lender and a borrower.  Genna v. Sallie Mae, Inc., No. 11-CV-7371, 2012 WL 1339482, *4 (S.D.N.Y. April 17, 2012) (dismissing breach of fiduciary claim because no fiduciary duty exists between a third-party loan servicer and borrower).  However, while "[t]he ordinary financial relationship between a [borrower] and a loan servicer does not automatically give rise to a fiduciary relationship," a fiduciary duty may exist "where it is created by 'specific contractual language' or additional special circumstances." Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427, 2014 WL 4773991, at *24, (E.D.N.Y. Sept. 24, 2014) (citing Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 422 (E.D.N.Y. 2013).)

Plaintiff's allegation that Navient breached its alleged duty "to act in a way which benefitted Plaintiff" is unavailing. (SAC 989.)  He does not plead the existence of "specific contract language" or "special circumstances" that would give rise to a fiduciary relationship.  Rather, Plaintiff claims that he "placed special reliance and confidence in Navient based on the representations made [ ] about Navient's expertise regarding

student loan repayment" (SAC 1019-21.) He asserts that "Navient holds itself out as an authority on student loan repayment options and encourages borrowers to contact it if they have any questions about their student loans." (SAC 1005-07.) These allegations, however, "do not establish that Navient has undertaken a fiduciary duty to act or give advice for the benefit of its borrowers." Hyland, 2019 WL 2918238 at *11 (finding allegations that "Navient actively held itself out as a source of guidance and expertise with respect to student loan repayment and encouraged borrowers to rely on its advice and representations . . . [did] not establish that Navient exercised the level of 'control and dominance' necessary for the existence of a fiduciary relationship"). Because Plaintiff has failed to plausibly allege the existence of a fiduciary relationship between himself and Navient, he is unable to state a claim of breach of fiduciary duty. Accordingly, Plaintiff's breach of fiduciary duty claim is DISMISSED with prejudice.

   7. Defamation

        Plaintiff bases his defamation claim on an October 4, 2017 letter Navient sent to "the loan owner and regulatory agency [HESC], in response to Plaintiff's dispute of the loans." (SAC 1084-85.) The letter states that "[o]n August 20, 201[7], [Plaintiff] contacted Navient Customer Service to verbally request forbearance." (SAC 1086-87.) Plaintiff claims that "this is

incorrect and [he] never requested a forbearance from Navient on August 20, 2017." (SAC 1088-89.) Additionally, Plaintiff claims that statements in the letter that Navient "never refused payments" and that Plaintiff failed to comply with SRSY's instructions on having his loan serviced were defamatory. (SAC 1093-107.)

Navient contends that Plaintiff fails to plead a defamation claim since: (a) Plaintiff's claim is time-barred; (b) truth is a defense; (c) the common interest privilege protects the statement; and, (d) Plaintiff has not pled special damages. (Non-Federal Defendants' Br. at 20-23.) Finding that the common interest privilege applies to the October 4th letter, the Court need not address Navient's other defenses to Plaintiff's defamation claim.

"In order to establish a defamation claim under New York law, a claimant must allege: (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special damages or constituting defamation per se, and (7) not protected by privilege." Prowley v. Hemar Ins. Corp. of Am., No. 05-CV-981, 2010 WL 1848222, at *6 (S.D.N.Y. May 7, 2010) (citing Ello v. Singh, 531 F. Supp. 2d 552, 575 (S.D.N.Y. 2007)). New York recognizes a qualified "common interest privilege" when the defamatory statement is made between persons who share a common

36

interest in the subject matter.  Liberman v. Gelstein, 80 N.Y.2d. 429, 437 (1992).  "[A] qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest."  Demas v. Levitsky, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) (citation omitted).  "The privilege creates a rebuttable presumption of good faith that constitutes a complete defense to defamation."  Hussey v. N.Y.S. Dep't of Law/Office of Atty. Gen., 933 F. Supp. 2d 399, 414 (E.D.N.Y. 2013).

"At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by [common law or constitutional] malice."  Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 173 (E.D.N.Y. 2014) (emphasis and citation omitted).  "Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication."  Fuji Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009)(citing Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 98 (2d Cir. 2000) (alterations in original) (citations and quotation marks omitted).  "Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication."

Id. (citing Konikoff, 234 F.3d at 99) (alterations in original) (quotation marks omitted).  "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege." Id. (citation omitted); see also Panghat v. N.Y. Downtown Hosp., 85 A.D.3d 473, 474 (N.Y. App. 1st Dep't 2011) (finding that defendants statements were "protected by the common interest privilege," since "[p]laintiff merely asserted in conclusory fashion that the statements at issue were made with malice, which is insufficient to overcome the privilege").

Here, as alleged by Plaintiff, Navient's October 4th letter was sent in response to HESC's inquiry regarding Plaintiff's Loan dispute.  (SAC 1084-85; Ex. 15, October 4, 2017 letter to HESC, attached to SAC (D.E. 43 at pp. 112-13).)  As the guarantor of Plaintiff's Loan, HESC had a common interest with Plaintiff's loan servicer, Navient.  (See SAC 1084-85.)  Further, once Plaintiff defaulted on his Loan, HESC became the Loan owner.  (SAC 1084-85.)  Thus, as the servicer of Plaintiff's Loans, Navient made a "bona fide communication" to HESC, the loan guarantor upon a subject in which they had a corresponding interest.  Therefore, the common interest privilege applies to Navient's communication with HESC.  Moreover, Plaintiff alleges no facts which, if proven, would defeat this privilege.  Rather, Plaintiff's allegations that "Defendant intentionally and/or negligently published false

statements to third parties about Plaintiff" (SAC 1078-79), and that "[Navient] was aware that these statements were false" (SAC 1080), are conclusory and unsupported by any factual allegations. Therefore, as Plaintiff fails to allege that Navient acted with malice, Plaintiff's allegations are insufficient to overcome the common interest privilege. See Fuji, 669 F. Supp. 2d at 415-16. Accordingly, Plaintiff's defamation claim is DISMISSED without prejudice.

### B. Claims Against Navient and SRSY

#### 1. FTC Act

As discussed supra, there is no private right of action under the FTC Act. See Hourani, 158 F. Supp. 3d at 148. Accordingly, Plaintiff's FTC Act claims against Navient and SRSY are DISMISSED with prejudice.

#### 2. Intentional Infliction of Emotional Distress

Under New York law, a claim of intentional infliction of emotional distress requires: "'(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)). New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring

39

that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Conboy, 241 F.3d at 258 (citing Stuto, 164 F.3d at 827) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993)). Even "[a]ctions 'likely [to] be considered reprehensible by most people' are not sufficient." DiRuzza v. Lanza, 685 F. App'x 34, 37 (2d Cir. 2017) (summary order) (quoting Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 56 (2016)). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Stuto, 164 F.3d at 827.

Here, Plaintiff alleges that Navient and SRSY "intentionally engaged in a campaign of outrageous conduct, including harassment against Plaintiff by telephone, email . . . and defaming Plaintiff by use of communications with 3rd parties." (SAC ¶48-50.) He asserts that Non-Federal Defendants used "vulgar and threatening language including the threat to have Plaintiff's house flash banged by police officers." (SAC ¶50-52.) Plaintiff further claims that he "greatly feared for his and his family's life" in light of "Gerard Donovan's history in litigation for alleged abusive behavior, coupled with his extensive weapons training." (SAC ¶56-58.)

Even accepting as true Plaintiff's allegations, Non-Federal Defendants' actions fall well short of the exceedingly high level of conduct typically deemed sufficient to sustain a claim for intentional infliction of emotional distress under New York law.  See Doe v. City of New York, 18-CV-670, 2018 WL 3824133, at *11 (E.D.N.Y. August 9, 2018) (finding allegations that defendants "pressured, bullied, threatened and intimidated" plaintiff insufficient to satisfy extreme and outrageous conduct); Fleming v. Hymes-Esposito, No. 12-CV-1154, 2013 WL 1285431 at *9 (S.D.N.Y. March 29, 2013) (finding allegations of defamation, numerous phone calls, and unauthorized visits to plaintiff's home failed to plead extreme and outrageous conduct).  For this reason, the Court grants the Non-Federal Defendants' Dismissal Motion as to Plaintiff's intentional infliction of emotional distress claim,[7] which claim is DISMISSED without prejudice.

3. Fraud

Under New York law, to state a claim for fraud a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3)

---

[7] The Non-Federal Defendants also argue that Plaintiff's claim is barred by the applicable one-year statute of limitations for intentional infliction of emotional distress claims.  (Non-Federal Defs.' Br. at 8.)  In his Opposition, Plaintiff contends that at least some of the conduct causing his alleged distress occurred within the one-year statutory period.  (Pl's Opp. Br. at 18-20.)  Because the Court finds that Plaintiff has not alleged conduct that is "extreme and outrageous," the Court need not reach the statute of limitations issue.

which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). Additionally, in accordance with Rule 9(b), a party alleging fraud must plead with particularity the circumstances constituting fraud. See FED. R. CIV. P. 9(b). Generally, to comply with Rule 9(b)'s specificity requirements, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006); Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."). Conclusory allegations of fraud will not survive Rule 9(b)'s heightened pleading standard, and therefore, will be subject to dismissal at the motion to dismiss stage. See Nasso v. Bio Reference Labs., Inc., 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (citing Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971)).

In the instant case, Plaintiff fails to plead fraud with sufficient plausibility or particularity to survive a motion to dismiss. Plaintiff claims generally that Navient and SRSY misrepresented information it provided to Plaintiff about his

Loans, including methods of loan servicing, and the removal of forbearances placed on his Loans. (SAC 1055-62, 1230-32.) However, Plaintiff's pleading does not identify the allegedly fraudulent statements, the speaker of those statements, or specify when and where the statements were made. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); Fennick v. NYCM, No. 13-CV-0085, 2013 WL 5323630, at *5 (N.D.N.Y. Sept. 20, 2013) ("To meet its burden of pleading a claim of fraud, the complaint must adequately specify the misleading or fraudulent statements the claimant alleges it relied upon as well as the location, time frame, and identity of those responsible for making the statements.").

Moreover, Plaintiff fails to explain how any of the alleged statements were fraudulent. The only specific allegation Plaintiff makes against SYSR is that "SRSY has recently stated that they had nothing to do with the servicing of Plaintiff's loans, further showing that their 'cease and desist' letter and other communications stating that SRSY will service the loans [were] false." (SAC 1242-44.) However, the cease and desist letter SRSY sent to Plaintiff on July 21, 2015 does not state that SRSY will service Plaintiff's Loans. On the contrary, the letter states that "[SRSY] made it clear to [Plaintiff] that [SRSY]

43

offices are not servicing your account.   Rather Navient is the servicer of your account." (June 18, 2015 and July 21, 2015 Cease and Desist letters from SRSY to Plaintiff, Ex. F, D.E. 59, at p.4.) Additionally, the June 18, 2015 cease and desist letter SRSY sent to Plaintiff also states that "Navient currently services federal student loans in your name." (Ex. F at 2.)   Thus, not only do Plaintiff's broad and generalized allegations of fraud fail to satisfy the particularity requirements of Rule 9(b), but they are contradicted by the cease and desist letters that Plaintiff references in his SAC.   For these reasons, Plaintiff's fraud claim is DISMISSED without prejudice.

    4. RICO

        To establish a RICO claim, a plaintiff must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (citations omitted).   As is relevant here, to establish a violation of 18 U.S.C. § 1962(c), the plaintiff "must plausibly allege that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." Id. at 308.   Thus, to plead a RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must show that a person engaged in (1) conduct (2) of an

44

enterprise (3) through a pattern (4) of racketeering activity." Id. at 306.   Because the Court finds that the SAC does not allege the existence of a RICO enterprise, Plaintiff's RICO claim fails.

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) (citation omitted).   Plaintiff claims that Navient and SRSY, along with their members and partners, formed an association-in-fact enterprise.   (SAC ¶¶74-80.)   An association-in-fact enterprise consists of "a group of persons associated together for a common purpose of engaging in a course of conduct." Boyle v. United States, 556 U.S. 938, 946 (2009) (citation omitted).   Such an enterprise must have "'both interpersonal relationships and a common interest' to show that an alleged group 'functions as a continuing unit.'" Abbott Labs. v. Adelphia Supply USA, No. 15-CV-5826, 2017 WL 57802, at *3 (E.D.N.Y. Jan. 4, 2017) (quoting Boyle, 556 U.S. at 946).   In analyzing whether a complaint alleges an association-in-fact enterprise, courts look to the "'hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit.'" BWP Media, 69 F. Supp. 3d at 360 (quoting Cont'l Petroleum Corp. Inc. v. Corp. Funding Partners, LLC, No. 11-CV-7801, 2012 WL 1231775, at *5 (S.D.N.Y. Apr. 12, 2012)).   A plaintiff must show "the relationships between the various members and their roles in the

purported RICO scheme." Abbott Labs., 2017 WL 57802, at *3 (internal quotation marks and citation omitted).

In the instant case, outside of conclusory statements, Plaintiff's SAC fails to set forth any allegations supporting a plausible claim that Navient and SRSY "associated together for a common purpose of engaging in a course of conduct," or functioned as a "continuing unit." Boyle, 556 U.S. at 946. Rather, Plaintiff's allegations establish no more than SRSY acted as Navient's attorneys by representing Donovan in his state court action against Plaintiff and providing legal assistance to Navient regarding Plaintiff's harassing conduct. See Rosner v. Bank of China, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (dismissing RICO claim where plaintiff failed to adequately allege a RICO enterprise because no facts alleged showed how defendants "improperly functioned as a unit").

In his Opposition, Plaintiff claims that Navient and SRSY were involved in the servicing of his Loans, thereby acting as a unit. (Pl.'s Opp. Br. at 26.) However, Plaintiff's assertion that SRSY actually serviced his Loans is not supported by the SAC. As discussed, supra, SRSY's cease and desist letters, referenced in the SAC, show that SRSY was not servicing Plaintiff's Loans, but assisting Navient in managing Plaintiff's harassment of its employees and offering to act as an intermediary between Navient and Plaintiff in Navient's service of Plaintiff's Loans. (Cf. SAC

46

1242-44, with Ex. F; see also Ex. 15 at p.1, attached to SAC.)
Thus, the relationship that SRSY had with Navient was that of
attorney-client, a relationship necessitated by Plaintiff's own
conduct.

Plaintiff's further argument, that the state court's
consent judgment ordering him to "remove information and not
publish any new information about SRSY, Gerard Donovan and Navient"
demonstrates a common interest, is unavailing. (Pl.'s Opp. Br. at
26-27.) The state court's consent judgment, permanently enjoining
Plaintiff from harassing, defaming and threatening Donovan and
from publishing any information about any of the Non-Federal
Defendants, was the result of Donovan's lawsuit against Plaintiff
and hardly shows that the Defendants shared a common purpose to
establish a RICO enterprise. Therefore, Plaintiff fails to
plausibly allege the existence of an association-in-fact
enterprise.

Accordingly, as Plaintiff has not satisfied the
"enterprise" element of a RICO claim, and because the Court finds
that there is no indication, even from a liberal reading of the
SAC, that a valid RICO claim might be plausibly stated, Plaintiff's
RICO claim is DISMISSED with prejudice.[8]

---

[8] Notably, courts have held that non-compliance with a regulatory
statute affording administrative remedies cannot form the basis
for a civil RICO claim. See, e.g., McCulloch v. PNC Bank Inc.,
298 F.3d 1217, 1227 (11th Cir. 2002) ("[I]n light of the HEA's

C. <u>Claims Against Navient, SRSY and Donovan</u>

    1. <u>Tortious Interference with Contract</u>

        To state a claim for tortious interference under New York law, a plaintiff must show: (1) "the existence of a valid contract between the plaintiff and a third party;" (2) the "defendant's knowledge of that contract;" (3) the "defendant's intentional procurement of a third-party's breach of contract without justification;" and (4) "damages." <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 401-02 (2d Cir. 2006). To satisfy the intentional procurement requirement, a plaintiff must allege that the breach would not have occurred "but for" the conduct of the defendants. <u>Sharma v. Skaarup Ship Mgmt. Corp.</u>, 916 F.2d 820, 828 (2d Cir. 1990); <u>White Plains Coat & Apron Co., Inc. v. Cintas</u>

_____

enforcement scheme, granting the Secretary of Education exclusive authority to remedy violations of the HEA, and the fact that the HEA does not confer a private right of action, the Court finds that the failure to disclose Stafford Loan information, even if in violation of the HEA, cannot form the basis for a civil RICO claim."); <u>N.Y. Instit. of Dietetics, Inc. v. Great Lakes Higher Ed. Corp.</u>, No. 94-CV-4858, 1995 WL 562189, at *4 (S.D.N.Y. Sept. 21, 1995) (dismissing RICO claim based on alleged HEA violations after concluding that plaintiffs cannot circumvent the HEA's administrative remedies by "packaging" their HEA claim as a RICO claim). <u>See also</u> <u>Norman v. Niagara Mohawk Power Group</u>, 873 F.2d 634, 637-38 (2d Cir. 1989) (rejecting plaintiffs' attempt to circumvent administrative remedies in the Energy Reorganization Act by pleading their claim in RICO terms). Therefore, Plaintiff's RICO claim fails for the additional reason that the Court will not allow Plaintiff to "circumvent the HEA's administrative remedies by 'packaging' [his] HEA claim as a RICO claim." <u>Dietetics</u>, 1995 WL 562189, at *4.

.

48

Corp., 8 N.Y.3d 422, 425 (2007)(defendant must have "induc[ed] or otherwise caus[ed]" the third-party not to perform the contract) (quoting Restatement (Second) of Torts § 766).) Additionally, "the law requires some factual specificity in pleading tortious interference." RSM Production Corp. v. Fridman, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), aff'd 387 Fed. App'x. 72 (2010) (citation omitted) (affirming dismissal of tortious interference with contract claim where plaintiff failed to plausibly plead that defendants' conduct caused the complained-of injury).

Plaintiff's claims that the Non-Federal Defendants tortuously interfered with his contract with the DOE fail because his SAC lacks the specificity required to state a claim for tortious interference with a contract. Plaintiff's conclusory allegation that the Non-Federal Defendants' conduct "induced DOE and others to breach the FFEL Loan Master Promissory Note Contract and or Direct Loan" (SAC 875-76; 1154-55; 1894-95), does not satisfy his pleading burden as mere recitation of the legal standard "without any relevant supporting facts is insufficient to state a cause of action for tortious interference with contractual relations." RSM, 643 F. Supp. 2d at 410 (quoting Granite Partners, L.P. v. Bear Stearn & Co. Inc., 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998)). Moreover, Plaintiff fails to include any factual allegations as to any actions taken by the Non-Federal Defendants to "intentional[ly] procure[ ]" the DOE's breach of the Note.

While Plaintiff refers to Navient's alleged failure to provide him with a toll-free number and its refusal to process payments, deferments and forbearances (SAC 885-87), he does not allege how this conduct was the "but for" cause of DOE's alleged breach of the Note.  See Sharma, 916 F.2d at 828; Hyland, 2019 WL 2918238, at *10 ("While Navient's alleged misrepresentations may have made it more difficult for the plaintiffs to take advantage of their contractual rights, this does not establish that the Department breached its contractual obligations to borrowers.").  Thus, in the absence of alleged facts demonstrating that "but for" the Non-Federal Defendants' actions, the DOE would not have breached its contract with Plaintiff, Plaintiff's tortious interference with contract claim fails warranting its DISMISSED without prejudice.

2. <u>Conspiracy to Violate Civil Rights</u>

In order to sustain a claim of conspiracy to interfere with another's civil rights, pursuant to 42 U.S.C. § 1985(2) ("Section 1985(2)"), a plaintiff must allege "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely therein, which (3) causes injury to the claimant." <u>Grant v. Abbott House</u>, No. 14-CV-8703, 2016 WL 796864, at *6 (S.D.N.Y. Feb. 22, 2016) (quoting <u>Herrera v. Scully</u>, 815 F. Supp. 713, 726 (S.D.N.Y. 1993); (42 U.S.C. § 1985(2)). Additionally, claims which apply to state court proceedings,

require a showing that the co-conspirators' actions were motivated by discriminatory "racial, ethnic, or class-based animus." Zemsky v. City of N.Y., 821 F. 2d 148, 151 (2d Cir. 1987).  It is well-settled that "in order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"  Webb v. Goord, 340 F.3d 105, 110–11 (2d Cir. 2003) (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  Furthermore, even where a plaintiff is proceeding pro se, a "'constitutional conspiracy claim must be pled with at least some degree of particularity.'"  Dove v. Fordham Univ., 56 F. Supp. 2d 330, 338 (S.D. N. Y. 1999) (quoting Laverpool v. N.Y.C. Transit Auth., 760 F. Supp. 1046, 1056 (E.D.N.Y. 1991)), aff'd sub nom. Dove v. O'Hare, 210 F.3d 354 (2d Cir. 2000).

Here, Plaintiff alleges that Defendants conspired "through threats of force and intimidation to deny [him] of his due process rights" and his "right to free speech." (SAC 1036-38, 1046-48.)  Specifically, Plaintiff alleges that Navient conspired "to dissuade Plaintiff from testifying" in the state court proceeding with Donovan by threatening "to have people come to Plaintiff's house to handle him, destroy his aquariums and fish, defame [him] and file false police reports against [him]." (SAC 1040-45.)  He claims that "[t]his [conspiracy] has taken place

through emails between the DOE and Navient, as well as other communications with co-defendants." (SAC 1038-39.) However, wholly missing are any allegations that there was a "meeting of the minds" among any of the Defendants. The Second Circuit has repeatedly held that similar "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (per curiam); see, e.g., Sylla v. City of N.Y., No. 04-CV-5692, 2005 WL 3336460 *7 (E.D.N.Y. 2005) (dismissing conspiracy claim for failure to allege a meeting of the minds among defendants). Thus, Plaintiff's Section 1985(2) claim must be dismissed for failure to state a claim.

Plaintiff's conspiracy claim further fails because he has not alleged that a class-based discriminatory animus motivated the Non-Federal Defendants' actions. Aside from a passing reference to his ethnicity and religion (SAC 134-37), Plaintiff's SAC contains no factual allegations that the co-conspirators' actions were motivated by discriminatory "racial, ethnic, or class-based animus." See Zemsky, 821 F.2d at 151. Therefore, Plaintiff fails to state a Section 1985(2) conspiracy claim against the Non-Federal Defendants resulting in it being DISMISSED without prejudice.

D. <u>Claims Against Donovan</u>

1. <u>Negligent Infliction of Emotional Distress</u>

A claim of negligent infliction of emotional distress "generally must be premised upon the breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." <u>Jones v. Commerce Bancorp, Inc.</u>, No. 06-CV-835, 2006 WL 1409492, at *4 (S.D.N.Y. May 23, 2006) (citation omitted). Thus, to recover for negligent infliction of emotional distress, there must be a duty owed from Defendant to Plaintiff. "The duty in such cases must be specific to the plaintiff, and not some amorphous, free floating duty to society." <u>Mortise v. United States</u>, 102 F.3d 693, 696 (2d Cir. 1996). Additionally, like intentional infliction of emotional distress, a claim of negligent infliction of emotional distress "must be supported by allegations of conduct by the defendants so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (citation omitted).

Plaintiff's allegations fail to state a claim for negligent infliction of emotional distress because he fails to allege that Donovan owed him a duty. "The general rule is that a lender does not owe tort duties to a borrower." <u>Hyland</u>, 2019 WL 2918238, at * at 11 (citing <u>Mfrs. Hanover Trust Co. v. Yanakas</u>, 7

F.3d 310, 318 (2d Cir. 1993)).  Courts have applied this rule to both lenders and loan servicers.  Id. (citing Harte v. Ocwen Fin. Corp., 13-CV-5410, 2014 WL 4677120, at *12 (E.D.N.Y. Sept. 19, 2014)).  Thus, as an employee of Plaintiff's loan servicer, Donovan owed no duty to Plaintiff.  Further, Plaintiff's claims that (1) Donovan "engaged in a campaign of outrageous conduct that comprised [of] harassing the Plaintiff in person, [and the] use of vulgar and threatening language" (SAC 1941-42), and that (2) "[a]s a third[-]party servicer[, Donovan was] required to fulfill the obligations as per the Master Promissory note which [he] failed to do" (SAC 1961-62) do not rise to the level of extreme or outrageous conduct.  (See supra Part III(B)(2)(discussing Plaintiff's claim of intentional infliction of emotional distress).)  Therefore, because Plaintiff fails to allege the existence of a duty or extreme and outrageous conduct, he has not stated a claim for negligent infliction of emotional distress; accordingly, said claim is DISMISSED with prejudice.

2. Contempt of Court

Plaintiff alleges that Donovan is in contempt for failing to comply with the August 3, 2017 state court consent judgment by refusing to answer questions related to the servicing of his Loans.  (SAC 1980-87.)  Pursuant to the terms of the consent judgment, the state court "retain[s] jurisdiction over the Parties for the purpose of enabling any Party to apply to the Court for

such further orders and directions as may be necessary or appropriate to enforce compliance with and to punish any violations of this Judgment." (Ex. D, ¶ 11.) Considering the state court's explicit retention of jurisdiction in conjunction with the fact that it is best qualified to interpret and enforce its own order, this Court declines to consider Plaintiff's contempt claim, which is DISMISSED without prejudice.

IV. <u>Leave to Amend</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see</u> <u>also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, leave to replead should be liberally granted to <u>pro</u> <u>se</u> litigants. <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010).

While the Court is mindful that Plaintiff has already been granted two opportunities to amend the Complaint, (<u>see</u> Nov. 14, 2018 Elec. Order and June 10, 2019 Elec. Order), Plaintiff is GRANTED LEAVE TO AMEND his SAC in accordance with this Memorandum and Order. Any Amended Complaint shall be filed within thirty (30) days from the date of this Memorandum and Order and shall be titled "Third Amended Complaint" and shall bear Case Number 18-CV-1243(JS)(AKT). Plaintiff is cautioned that his failure to

timely file a Third Amended Complaint will lead to the dismissal of his SAC with prejudice and the closure of this case.

CONCLUSION

For the foregoing reasons, the Court grants both the Federal Defendants' and the Non-Federal Defendants' Dismissal Motions. With regard to the Federal Defendants, Plaintiff's claims for violations of the FTC Act, the CFPA, the FCRA, the FTCA, as well as the Constitution and FOIA, are DISMISSED with prejudice; whereas, Plaintiff's claims pursuant to the APA and for breach of contract are DISMISSED without prejudice. As for the Non-Federal Defendants, Plaintiff's claims for violations of the CFPA, the FDCPA, the FTC Act, RICO, as well as his claims for breach of contract, unjust enrichment, breach of fiduciary duty, and negligent infliction of emotional distress are DISMISSED with prejudice; whereas, his claims for violation of the FCRA, defamation, intentional infliction of emotional distress, fraud, tortious interference with contract, conspiracy, and contempt are DISMISSED without prejudice.

Plaintiff is GRANTED leave to file a Third Amended Complaint in accordance with this Memorandum and Order. **Plaintiff is ON NOTICE**: Failure to timely file a Third Amended Complaint will result in the dismissal of this action with prejudice and judgment will enter in favor of the Defendants.

The Government is directed to mail a copy of this Order to the <u>pro se</u> Plaintiff and file proof of said service.

**SO ORDERED.**

/s/ *Joanna Seybert*
JOANNA SEYBERT, U.S.D.J.

Dated:      December 4, 2020
            Central Islip, New York