UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
GARY EDELMAN,

                        Plaintiff,

                                                    MEMORANDUM & ORDER
                                                    18-CV-2143(JS)(SIL)

        -against-

UNITED STATES GOVERNMENT;
DEPARTMENT OF EDUCATION;
BETSY DEVOS; NAVIENT SOLUTIONS;
STRADLEY RONON STEVENS & YOUNG;
GERARD DONOVAN; JOYCE DEMOSS;
THADDEUS BARTKOWIAK; DAWN SCANIFFE;
ANGELICA KAMIONKA; EMILY POLLACK;
JOCYLINE (LAST NAME UNKNOWN);
DONNA SOLES; ERIC HURWITZ; FRANCIS
MANNING (ALIAS: FRANNY); NEW YORK
HIGHER EDUCATION; THOMAS BRENNAN;
ALEX RODRIGUEZ; NICOLETTE PIRRONE;
DEPARTMENT OF JUSTICE; ROBERT
SHUMACHER, II; VAUGHN BOND;
ROY MAHON; and JOANNA SEYBERT,

                        Defendants.
--------------------------------x
APPEARANCES:
For Plaintiff:              Gary Edelman, pro se
                           1715 Union Avenue
                           Hewlett, New York  11557


For Defendants:
United States of America,
Department of Education,
and Betsy DeVos:           Richard W. Schumacher II, Esq.
                           James H. Knapp, Esq.
                           United States Attorney's Office
                           Eastern District of New York
                           610 Federal Plaza
                           Central Islip, New York  11722


Navient Solutions, LLC,
Stradley Ronon Stevens
& Young, LLP, and
Gerard Donovan:            Francis X. Manning, Esq.

Stradley Ronon Stevens & Young, LLP
457 Haddonfield Road, Suite 100
Cherry Hill, New Jersey  08002

Joyce Demoss, Thaddeus
Bartkowiak, Dawn
Scaniffe, Angelica
Kamionka, Emily Pollack,
Joycyline (last name
unknown), Donna Soles,
Eric Hurwitz, Francis
Manning (alias: Franny),
New York Higher Education,
Thomas Brennan, Alex
Rodriguez, Nicolette
Pirrone, Department of
Justice, Robert Schumacher
II, Vaughn Bond, Roy Mahon,
Joanna Seybert:                    No Appearances.

SEYBERT, District Judge:

        Before the Court is the Third Amended Complaint filed

pro se by plaintiff Gary Edelman ("Plaintiff" or "Edelman").  For

the reasons that follow, the Third Amended Complaint ("TAC") is

DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Clerk of the

Court shall enter JUDGMENT and mark this case CLOSED.

BACKGROUND

        The Court assumes familiarity with the background of

this case.

I.    Procedural History

        The Court recites only those portions of the procedural

history relevant to review of Plaintiff's TAC.  On December 4,

2020, this Court issued an order granting the respective motions

to  dismiss  filed  by  the  United  States  Government  (the

"Government"), the United States Department of Education ("DOE"), Betsy Devos, in her official capacity as Secretary of Education ("Devos" and together with the United States and DOE, the "Federal Defendants"), Gerard Donovan ("Donovan"), Stradley Ronon Stevens & Young, LLP ("SRSY"), and Navient Solutions, LLC. ("Navient" and together with Donovan and SRSY, the "Non-Federal Defendants"; collectively with the Federal Defendants, the "Defendants") and dismissing Plaintiff's Second Amended Complaint ("SAC"). (See Order at 56, ECF No. 65.)  The Court further granted Plaintiff leave to file a TAC within thirty (30) days from the date of the December 4, 2020 Memorandum & Order, i.e., on or before January 4, 2021. (Id. at 55.)

Upon Plaintiff's request, the Court extended the deadline to file the TAC through April 6, 2021. (See Jan. 4, 2021 Ltr., ECF No. 67; Jan. 6, 2021 Elec. Order.)  After the April 6, 2021 deadline for Plaintiff to file his TAC passed without Plaintiff exercising his right to amend, the Court became aware of a document, date stamped June 13, 2021, that was apparently filed by Plaintiff in the Clerk's Office for the Eastern District of New York, Brooklyn. (See June 13, 2021 Submission, ECF No. 73.)  That document indicated, on the first page of the submission, that Plaintiff "[a]ttached [h]is Amended Complaint 3." (Id. at 1.)  As far as the Court could discern, no amended complaint had been filed with the submission.  Accordingly, by Order dated December 15,

3

2021, Plaintiff was afforded a final thirty (30) days, or by January 14, 2022, to "date, sign, file and serve the third amended complaint he supposedly filed with his June 13, 2021 submission." (Dec. 15, 2021 Order, ECF No. 74.)  On January 14, 2022, Plaintiff timely filed his TAC.  (TAC, ECF No. 75.)

II.  The Court's December 4, 2020 Order

    Given that "Plaintiff [wa]s granted leave to amend his SAC in accordance with this Memorandum and Order," the Court summarizes that fifty-seven-page Memorandum and Order as is relevant to the present matter.  (Order at 55.)

    All Defendants had moved to dismiss the SAC, which purported to allege numerous claims against the Non-Federal Defendants related to the servicing of Plaintiff's federal student loans, as well as a claim that the Federal Defendants colluded with the Non-Federal Defendants, thereby violating federal and state law.  (Id. at 2.)  More specifically, the Federal Defendants moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and the Non-Federal Defendants' moved to dismiss pursuant to Rule 12(b)(6).

    The Court reviewed the lengthy procedural history between the parties, including the prior proceeding commenced in

2016 in the Nassau County Supreme Court involving Plaintiff and SRSY, on behalf of Donovan, an employee of Navient, alleging harassment due to Plaintiff's voluminous phone calls and internet postings regarding Donovan. (See State Compl. dated Apr. 25, 2016, ECF No. 58-2, Ex. A, attached to Decl. of Francis X. Manning.) Edelman filed counterclaims against Donovan alleging harassment and interference with his ability to have his loans serviced. (Pl. Countercls., Ex. B.) On September 14, 2016, those counterclaims were dismissed with prejudice. (Sept. 14, 2016 Dismissal Order, Ex. C.)

The parties negotiated a settlement as to Donovan's claims against Plaintiff memorialized in a consent judgment entered on August 3, 2017. (Aug. 3, 2017 Consent J., Ex. D.) Pursuant to the consent judgment: (1) Plaintiff agreed to remove all his internet postings referencing Navient, its employees and affiliates, including Donovan, and SRSY and its attorneys and employees (see id. ¶ 2); and (2) Plaintiff was permanently enjoined from: (a) posting anything on the internet or otherwise publishing information concerning any of the parties with limited exceptions (see id. ¶ 3), (b) contacting Donovan in any manner, or harassing, defaming or threatening him, and from interfering in his employment relationship with Navient (see id. ¶¶ 4, 5); (c) communicating with Navient or any person employed by, or affiliated with Navient, with the limited exception regarding e-mail correspondence to

Navient concerning legitimate inquiries as to any of his student loans that were being serviced by Navient (see id. ¶ 8); and (d) calling SRSY or any employees of SRSY (see id. ¶ 7).

Approximately eight months later, on April 11, 2018, Plaintiff filed a complaint in this Court against the Government (see Compl., ECF No. 1); on July 3, 2018, he commenced a separate action against Navient, SRSY and Donovan (see Not. Related Case, ECF No. 5). On November 14, 2018, among other things, the Court consolidated Plaintiff's two federal cases. (Nov. 14, 2018 Elec. Order.) Plaintiff then filed an amended complaint against all Defendants on December 12, 2018 (ECF No. 15) and was later permitted to file a SAC, which Plaintiff filed on June 24, 2019. (SAC, ECF No. 43.)

The SAC raised thirty-eight counts related to Plaintiff's federal student loans, consisting of Federal Family Education Loans ("FFEL") and/or direct loans, which he obtained from the DOE between 2003 and 2011 to pay for his undergraduate and graduate studies (hereafter, the "Loans"). (SAC 25-32, 98-99.)[1] With two exceptions, the Loans were guaranteed by the DOE. (SAC 100-01.) The Court carefully and painstakingly considered

_____

[1] The SAC was comprised of 264 numbered paragraphs as well as 2035 numbered lines. For clarity, the citations to the SAC are to the lines as numbered by Plaintiff.

each of Plaintiff's claims and the Defendants' arguments as set forth in their respective motions to dismiss.

A.   Claims Dismissed for Lack of Subject Matter Jurisdiction

The doctrine of sovereign immunity shields the United States, its agencies, and its officers in their official capacities, from suit, absent a waiver.  In the absence of any allegations suggesting the basis for a waiver of the Federal Defendants' sovereign immunity in the SAC, the Court liberally construed the pro se submission and considered whether immunity had been waived.  (See Order at 15-26.)

Finding no waiver of sovereign immunity with regard to Plaintiff's constitutional claims alleging a deprivation of his Fifth and Fourteenth Amendment rights against DeVos, the Court dismissed these claims for lack of subject matter jurisdiction. The Court concluded that "an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States," so "such suits are barred under the doctrine of sovereign immunity unless such immunity is waived." (Id. at 19 (internal quotation marks and citation omitted).) Similarly, the Court dismissed Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., against the Federal Defendants for lack of subject matter jurisdiction, because the FCRA does not contain a clear and unequivocal waiver of the Government's sovereign immunity.  (Id. at 19-20.)

Likewise, to the extent that the SAC alleged claims sounding in tort against the Federal Defendants, the Court dismissed them for lack of subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. (Order at 20-22.)  Although the FTCA provides a limited waiver of sovereign immunity where suit is brought against the United States based upon torts committed by its officers, "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000."  (Id. at 21 (quoting Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002)).  Thus, the Court found that Plaintiff's tort claims against the Federal Defendants for breach of fiduciary duty and intentional infliction of emotional distress (SAC 1663-713, 1642-59) stem from a contract, i.e., the master promissory note (the "Note"), and thus are merely a restatement of Plaintiff's breach of contract claim.  (Order at 22.)  Similarly, the Court found that Plaintiff's intentional infliction of emotional distress claim against the Federal Defendants is premised on the DOE's efforts in having the Loans serviced.  (Id. (citing SAC 1644-48).)  Because such allegations were "inextricably intertwined" with the DOE's alleged breach of the loan agreement, and given that both claims sought monetary damages, which is relief that is generally considered contractual,

the Court found that the FTCA's limited waiver of sovereign immunity did not apply. Accordingly, the Court lacked subject matter jurisdiction to adjudicate Plaintiff's breach of fiduciary duty and intentional infliction of emotional distress claims. (Id. at 23.)

The Court also dismissed Plaintiff's breach of contract claims under the Tucker Act, 28 U.S.C. § 1491, et seq., for lack of subject matter jurisdiction, because the Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over, inter alia, "any claim against the United States founded . . . upon any express or implied contract with the United States" in excess of $10,000. 28 U.S.C. § 1491(a)(1). (Order at 16.)

Further, the Court found that it lacked subject matter jurisdiction to adjudicate Plaintiff's claims against the Federal Defendants brought pursuant to the Administrative Procedure Act ("APA") given that Plaintiff did not allege that he complied with the applicable regulations governing the procedures for a borrower seeking to cancel his federal student loans. (Id. at 23-25.) Notably, in light of Plaintiff's pro se status, the Court granted Plaintiff leave to amend his APA claims to address this deficiency in his pleadings, i.e., the lack of allegations that he followed the applicable administrative procedures governing the cancellation of his Loans if, in fact, he followed said procedures. (Id. at 25.)

9

B.   Claims Dismissed with Prejudice for Failure to State
     a Claim for Relief

Plaintiff's claims brought under 15 U.S.C. § 45(a) of
the Federal Trade Commission Act (the "FTC Act") were dismissed
with prejudice, because the FTC Act is only subject to enforcement
by the Federal Trade Commission and does not provide for a private
cause of action.  See Hourani v. Wells Fargo Bank, N.A., 158 F.
Supp. 3d 142, 148 (E.D.N.Y. 2016) (citing Alfred Dunhill Ltd. v.
Interstate Cigar Co., 499 F.2d 232, 237 (2d Cir. 1974)) (finding
no statutory basis for a private right of action under the FTCA).
Similarly, any claim brought pursuant to the Higher Education Act
of 1965 ("HEA"), 20 U.S.C. § 1070, et seq.,[2] failed to state a
claim for relief because the HEA does not provide a private right
of action for student borrowers.   (See Order at 17); see also
Wimberly v. U.S. Dep't of Educ., No. 12-CV-7773, 2013 WL 6123172,
at *2 (S.D.N.Y. Nov. 21, 2013); Nehorai v. U.S. Dep't of Educ.
Direct Loan, No. 08-CV-920, 2008 WL 1767072 at *1 (E.D.N.Y. Apr.
14, 2008).  Accordingly, Plaintiff's FTC Act claims were dismissed
with prejudice.  (Order at 17, 39.)

_____

[2] Although Plaintiff raised the HEA for the first time in his
opposition papers (see Pl. Br., ECF No. 62, at 2), the Court
nonetheless considered such claim given his pro se status even
though a plaintiff "cannot amend [his] complaint by asserting new
facts or theories for the first time in opposition to
[d]efendant['s] motion to dismiss." K.D. ex rel. Duncan v. White
Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013).

The Court also dismissed Plaintiff's claims under the Consumer Financial Protection Act ("CFPA"), which provides that "[i]f any person violates a Federal consumer financial law, the [Consumer Financial Protection Bureau] may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 15 U.S.C. § 5564(a). Thus, since the CFPA authorizes only the Consumer Financial Protection Bureau to bring claims under the statute, Plaintiff was foreclosed from privately maintaining such an action. See Fraser v. Aames Funding Corp., No. 16-CV-0448, 2017 WL 564727, at *4-5 (E.D.N.Y. Jan. 24, 2017). Accordingly, Plaintiff's CFPA claims were dismissed with prejudice. (Order at 18, 29.)

Similarly, Plaintiff's Freedom of Information Act ("FOIA") claims, which exclusively sought monetary damages in the amount of $15,000 (SAC 2031), were dismissed with prejudice because "the FOIA does not provide a private right of action for monetary damages. See Diamond v. FBI, 532 F. Supp. 216, 233 (S.D.N.Y. 1981) (citing 5 U.S.C. § 552(a)(4)(B)), aff'd sub nom. 707 F.2d 75 (2d Cir. 1983)." (Order at 26.)

Further, Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claims against Navient were dismissed with prejudice because Navient is not a debt collector under the statute. (Id. at 29.) Critically, the Act defines a "debt collector" as a person

11

"who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts," 15 U.S.C. § 1692a(6), and explicitly excludes "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." (Order at 29-30.) Indeed, "[w]hen a loan servicer obtains an account prior to its default, that loan servicer operates as a creditor, not a debt collector, for the purposes of the FDCPA." Allen v. United Student Aid Funds, Inc., No. 17-CV-8192, 2018 WL 4680023, at *4 (S.D.N.Y. Sept. 28, 2018), reconsideration denied, 2019 WL 4686529 (S.D.N.Y. Sept. 26, 2019) (citation omitted) (finding Navient was not a debt collector under the FDCPA when it began servicing the plaintiff's loans prior to default). Therefore, because Plaintiff had not plausibly alleged that Navient was a "debt collector" within the meaning of the FDCPA -- nor could he -- his FDCPA claim was dismissed with prejudice. (Order at 30.)

Next, the Court dismissed with prejudice Plaintiff's claims against Navient for breach of contract, unjust enrichment, and breach of fiduciary duty. (Id. at 32-33.) The Court explained that "[d]istrict courts in this Circuit have held that in the absence of express language in the servicing contract between the Government and a loan servicer, such contracts do not confer third-

party beneficiary status on borrowers like Plaintiff." (Id. at 31
(citations omitted).)   Thus, Plaintiff's failure to identify any
language in the servicing contract between the DOE and Navient
evidencing an intent to permit enforcement by borrowers, precluded
his claim that he is anything more than an incidental beneficiary.
As such, Plaintiff's breach of contract claim against Navient
failed to state a claim and was dismissed with prejudice.  (Id. at
32.)   Similarly, Plaintiff's unjust enrichment claim against
Navient was dismissed with prejudice because such claims are a
quasi-contract theory and lie only "in the absence of any
agreement." (Id. at 32-33 (citations omitted).)  Further, because
Plaintiff had not plausibly alleged the existence of a fiduciary
relationship between himself and Navient -- nor could he -- (see
id. at 34-35), his breach of fiduciary duty failed to state a claim
and was thus dismissed with prejudice.  (Id. at 35.)

        The Court also dismissed Plaintiff's RICO claims brought
against Navient and SRSY with prejudice for failure to "satisf[y]
the 'enterprise' element of a RICO claim." (Id. at 47.)  The Court
found that "there [wa]s no indication, even from a liberal reading
of the SAC, that a valid RICO claim might be plausibly stated."
(Id. at 44-47 and n.8.)  Last, Plaintiff's negligent infliction of
emotional distress claim alleged against Donovan was dismissed
with prejudice because Plaintiff did not allege -- nor could he -
- that Donovan owed him a duty.  (Id. at 53-54 ("The general rule

13

is that a lender does not owe tort duties to a borrower." (internal quotation marks and citation omitted)).)

C.   Claims Dismissed Without Prejudice for Failure to State a Claim

Of the 38 claims set forth in the SAC, all of them were dismissed either for lack of subject matter jurisdiction or with prejudice for failure to state a claim for relief with the exception of the following claims which were dismissed without prejudice for failure to state a claim for relief as pleaded. Plaintiff was permitted Plaintiff to re-plead only these claims, with the exception of his contempt of court claim, in a TAC.

Plaintiff's claims against Navient brought pursuant to the FCRA, 15 U.S.C. § § 1681, et seq., and for defamation, as pleaded in the SAC, did not state a claim.   (Order at 27-28.) Accordingly, these claims were dismissed without prejudice.   With regard to the FCRA claim, Plaintiff had alleged that Navient provided inaccurate information to credit reporting agencies and failed to conduct a reasonable investigation of the inaccuracies after Plaintiff disputed them.   (SAC 836-47, 855-67.)   However, pursuant to 15 U.S.C. § 1681s-2(b) ("Section 1681s-2(b)"), a claim may be stated only if a plaintiff shows that: "(1) the furnisher [of information] received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute."   (Order at

27 (quoting <u>Nguyen v. Ridgewood Sav. Bank</u>, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014)).  Notably, the furnisher's duty to investigate as set forth in Section 1681s-2(b) "is triggered only after a furnisher of information receives notice <u>from a credit reporting agency</u> of a consumer's dispute." (<u>Id.</u> (quoting <u>Mendy v. JP Morgan Chase & Co.</u>, No. 12-CV-8252, 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014).)

In the absence of any allegations that Navient received notification from a consumer reporting agency regarding the accuracy of information furnished by Navient, as required by Section 1681s-2(b), the Court concluded that Plaintiff lacked standing to bring his FCRA claim.  (<u>Id.</u> at 28 (citing <u>Prakash v. Homecomings Fin.</u>, No. 05-CV-2895, 2006 WL 2570900 at *3, 4-5 (E.D.N.Y. Sept. 5, 2006) ("[P]laintiff lacks standing to bring his claims under the Fair Credit Reporting Act" where "nowhere in the complaint or opposition to the instant motion does plaintiff allege that defendant [data furnisher] received notice of the dispute from a credit reporting agency.").)  Accordingly, Plaintiff's FCRA claims against Navient were dismissed without prejudice.  (<u>Id.</u> at 29.)

Plaintiff's defamation claim, which was based on an October 4, 2017 letter Navient sent to "the loan owner and regulatory agency [HESC], in response to Plaintiff's dispute of the loans" (SAC 1084-85) did not state a claim because the common

15

law privilege protected the challenged statement.  (Id. at 35-36.)

The Court explained:

> New York recognizes a qualified "common interest
> privilege" when the defamatory statement is made between
> persons who share a common interest in the subject
> matter.  Liberman v. Gelstein, 80 N.Y.2d. 429, 437
> (1992).  "[A] qualified privilege arises when a person
> makes a good-faith, bona fide communication upon a
> subject in which he or she has an interest, or a legal,
> moral or societal interest to speak, and the
> communication is made to a person with a corresponding
> interest."  Demas v. Levitsky, 738 N.Y.S.2d 402, 410 (3d
> Dep't 2002) (citation omitted).

(Id. at 36-37.)  However, "a plaintiff can overcome the common

interest privilege by alleging that the defamatory statement was

motivated solely by [common law or constitutional] malice."  (Id.

at 37 (quoting Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 173

(E.D.N.Y. 2014) (emphasis and citation omitted)). In the absence

of any facts which, if proven, would defeat this privilege,

Plaintiff failed to state a plausible defamation claim.  (Id. at

39.)  Finding Plaintiff's allegations that Navient's statement was

"intentional" or "negligent" were wholly conclusory and

unsupported by any factual allegation, the Court dismissed

Plaintiff's defamations claim without prejudice.  (Id. at 38-39.)

    The Court also dismissed Plaintiff's intentional

infliction of emotional distress claims against Navient and SRSY

without prejudice because, as pleaded, he did not state a plausible

claim.  (Id. at 41.)  As the Court explained:

> Even accepting as true Plaintiff's allegations, Non-Federal Defendants' actions fall well short of the exceedingly high level of conduct typically deemed sufficient to sustain a claim for intentional infliction of emotional distress under New York law. See Doe v. City of New York, 18-CV-670, 2018 WL 3824133, at *11 (E.D.N.Y. August 9, 2018) (finding allegations that defendants "pressured, bullied, threatened and intimidated" plaintiff insufficient to satisfy extreme and outrageous conduct); Fleming v. Hymes-Esposito, No. 12-CV-1154, 2013 WL 1285431 at *9 (S.D.N.Y. March 29, 2013) (finding allegations of defamation, numerous phone calls, and unauthorized visits to plaintiff's home failed to plead extreme and outrageous conduct).

(Id.) Accordingly, in the absence of factual allegations of conduct that is "extreme" and "outrageous," the Court dismissed Plaintiff's intentional infliction of emotional distress claims without prejudice. (Id.)

Plaintiff's fraud claim against Navient and SRSY was dismissed without prejudice because Plaintiff did not plausibly allege any of the elements for such claim as required by New York State law, nor did he comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement. (Id. at 41-44.) Specifically, fatal to Plaintiff's fraud claim was the absence of the identity of "the allegedly fraudulent statements, the speaker of those statements," or "when and where the statements were made. (Id. at 43.) Further, "Plaintiff fail[ed] to explain how any of the alleged statements were fraudulent." (Id.) Thus, the Court dismissed Plaintiff's fraud claim without prejudice. (Id. at 44.)

Similarly, Plaintiff did not plausibly allege a tortious interference with a contract claim under New York State law against the Non-Federal Defendants. (Id. at 46-50.) Plaintiff's conclusory allegations that the Non-Federal Defendants tortiously interfered with his contract with the DOE were not plausible because they "lack[ed] the specificity required to state a claim for tortious interference with a contract." (Id. at 49.) Indeed, the Court found that "Plaintiff's conclusory allegation that the Non-Federal Defendants' conduct 'induced DOE and others to breach the FFEL Loan Master Promissory Note Contract and or Direct Loan' (SAC 875-76; 1154-55; 1894-95), does not satisfy his pleading burden as mere recitation of the legal standard." (Id.) Further, "Plaintiff fail[ed] to include any factual allegations as to any actions taken by the Non-Federal Defendants to "intentionally procure" the DOE's breach of the Note. (Id. (cleaned up).) While Plaintiff refers to Navient's alleged failure to provide him with a toll-free number and its refusal to process payments, deferments, and forbearances (SAC 885-87), he does not allege how this conduct was the "but for" cause of DOE's alleged breach of the Note. (Id. at 49-50.) Accordingly, the Court dismissed Plaintiff's tortious interference with contract claim without prejudice. (Id. at 50.)

Plaintiff's conspiracy claim against the Defendants, brought pursuant to 42 U.S.C. § 1985(2), was also dismissed without prejudice in the absence of any allegations suggesting that there

was a "meeting of the minds" among any of the Defendants or that
a class-based discriminatory animus motivated the Non-Federal
Defendants' actions. (Id. at 50-52.) Finally, the Court declined
to consider Plaintiff's contempt of court against Donovan, given
"the state court's explicit retention of jurisdiction," and thus
dismissed such claim without prejudice and in deference to the
state court which "is best qualified to interpret and enforce its
own order." (Id. at 54-55.)

The Court granted Plaintiff leave to amend his SAC "in
accordance with this Memorandum and Order and," on January 14,
2022, Plaintiff filed his 143-page TAC against all of the same
Defendants as the SAC but with the addition of some eighteen new
defendants,[3] including the undersigned.

III. The Third Amended Complaint

Notwithstanding the Court's clear guidance that
Plaintiff was "granted leave to file a Third Amended Complaint in
accordance with th[e] Memorandum and Order," Plaintiff has instead
filed a voluminous TAC adding many New Defendants and fanciful
allegations. (See generally TAC and in particular lines 148-158,

---

[3] The "New Defendants" are: Joyce Demoss, Thaddeus Bartkowiak, Dawn
Scaniffe, Angelica Kamionka, Emily Pollack, Jocyline (last name
unknown), Donna Soles, Eric Hurwitz, Francis Manning (alias:
Franny), New York Higher Education, Thomas Brennan, Alex
Rodriguez, Nicolette Pirrone, Department of Justice, Robert
Shumacher, II, Vaughn Bond, Roy Mahon, and the undersigned, Joanna
Seybert. (See TAC at pp. 1, 7-8.)

196-202, 508-519.)   Upon closer review, however, Plaintiff has largely simply re-submitted his SAC.  Indeed, only 16 of the 143 pages are new.  (See TAC at pp. 1-8, 45-49, 109-111.)  Plaintiff has, however, amended the SAC to allege all of his claims against all of the Defendants in the TAC (see TAC at pp. 51, 53-56, 58-60, 62-64, 66, 68-72, 82, 84, 85-89, 91-99, 101-102, 104, 106-107), has added eighteen New Defendants, and has included four new paragraphs on page 22.[4]  Given that the Court has already painstakingly and comprehensively analyzed and dismissed all of the claims set forth in the SAC in its fifty-seven-page opinion, many for lack of subject matter jurisdiction or with prejudice for failure to state a claim for relief, the Court considers only the new allegations.[5]  (Compare SAC, with TAC.)

---

[4] Notably, Plaintiff added four new paragraphs on page 22 of the TAC (¶¶ 95-98) wherein he claims for the first time that he was "sexually assaulted" when, "[i]n collusion with other defendants[,] a[n] unknown paid person and Scott Bernstein of SRSY . . . grabb[ed] [] my genitals and st[uck] a finger in my rectum after sneaking up on me." (Id. at 22, ¶ 95.)  Plaintiff further alleges that unspecified "Defendants made anti[-]Semitic remakes [sic] and stated that because of my Jewish religion and Middle Eastern nationality that I 'qualified' for special treatment, which was harassment, target of fraud, battery and sexual harassment." (Id. ¶ 96.)  Plaintiff also claims that unidentified "DOE employees stated that because of 9/11 and 'the Jews' involvement, special precautions were taken against me . . . due to my heritage." (Id. ¶ 97.)  Further, Plaintiff alleges that "SRSY and Navient employees called me a Kike, people hate the Jews and they can do what they want . . . because no one 'believes Jews.'" (Id. ¶ 98.)

[5] In light of Plaintiff's pro se status and in an abundance of caution, the Court reviews the new allegations in TAC

Plaintiff's typed TAC begins with a "**<u>WARNING</u>**" that the document was prepared without access to PACER, "the court[']s computers, printers, copy machine and library." (TAC at p. 2.) Plaintiff next complains that he "has been denied access to minutes of the trial."[6] (<u>Id.</u>) As a result, Plaintiff claims he was "denied fair due process." (<u>Id.</u>)

Next, under the heading "**<u>Procedural History</u>**", Plaintiff challenges the Court's November 14, 2018[7] consolidation of the present case with Plaintiff's other case arising from the same

---

notwithstanding the fact that they are well beyond the scope of the limited leave to amend this Court granted. The Court is well "authorized to dismiss claims going beyond the scope of the original lawsuit and the permitted amendment." <u>McCray v. New York</u>, No. 17-CV-1395, 2019 WL 5634841, at *3 (S.D.N.Y. Oct. 31, 2019) (citing <u>McCray v. Caparco</u>, 761 F. App'x 27, 30-31 (2d Cir. Jan. 31, 2019)) (affirming dismissal of amended complaint because it went beyond the scope of the permitted amendment); <u>Palm Beach Strategic Income, LP v. Salzman</u>, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

[6] Given that this case is pre-trial, there is no trial transcript. Notwithstanding, insofar as Plaintiff sought "transcripts," the Court properly directed him to the court reporter as is the procedure for obtaining transcripts of any proceeding in the Eastern District of New York. (<u>See</u> Mar. 10, 2021 Elec. Order ("Any requests for transcripts must be directed to the court reporter.").)

[7] Although Plaintiff references "a November 2014" decision of the undersigned, the Court understands it to be the November 14, 2018 Electronic Consolidation Order. Since this case was commenced in 2018, there are no 2014 decisions.

facts, No. 18-CV-3852, and alleges that the undersigned's "writing is wrong, misleading and changing to benefit the courts and the Defendants." (Id.)  Plaintiff complains that the undersigned referenced his pro se status and alleges that the Court "tr[ied] to discreate [sic] my credibility by calling me Pro Se, such as my arguments don't matter." (Id.)  Further, Plaintiff claims that the undersigned "gives the false impression that extensions and requests for amended motions are done for my well being which is absolutely false.  These extensions are made for the well being of the defendants, who her and her clerks have a close relationship outside courts."  (Id.)  Plaintiff also challenges the undersigned's denial of his request for an interlocutory appeal and claims the undersigned "misrepresented the fact that my papers were not signed" and claims that the undersigned "contacted the PACER department to block my access."  (Id. at pp. 3, 6.)

Later on in the TAC, Plaintiff dissects the Court's December 4, 2020 Memorandum and Order and recites the "[t]hings Judge Seybert got wrong."  (TAC at p. 45.)  According to the TAC, the undersigned's "orders are contradictory, not based on much fact or laws and [are] incoherent at times."  (Id.)  Plaintiff also complains that he is "unable to use a searchable format of this 'decision' due to his inability to access PACER."  (Id.)  Plaintiff complains that the undersigned blocked his access to PACER as an administrative procedure, not by order, thus placing

the alleged act beyond the scope of judicial immunity.  (Id. at p. 8.)  Further, Plaintiff alleges that the undersigned was added as a defendant in June of 2021, "acknowledged receiving the amended complaint and yet still is acting as a judge, even after she was removed."  (Id.)

The TAC also now names the Honorable Roy Mahon, New York State Supreme Court Justice, Nassau County, and the undersigned as defendants.[8]  Plaintiff alleges that Justice Mahon is a "white supremacist and proud boy members [sic]" who "us[ed] his influence in order to impact Federal legal proceedings."  (Id. at p. 6.) Plaintiff claims that Justice Mahon called Plaintiff "saying how insulting it is I brought these claims to the Federal court system and it is insulting to him.  He even stated I was 'stupid for a Jew.'"  (Id.)  Plaintiff claims that Justice Mahon "had private emails conversations with other defendants in which they asked for 'favors' from him which he complied."  (Id. at p. 8.)

In addition, Plaintiff claims, for the first time, that Vaughn Bond ("Bond"), an employee at the New Castle Police Department, together with Donovan, have "committed violence and sexual assault against plaintiff" and have "hack[ed] into my cloud, trigger[ed] my alarm system as part of their swatting campaign and [have] personally called and threatened me."  (Id.)  Bond allegedly

---

[8] Justice Mahon presided during related state court proceedings brought by Donovan against Edelman.  (See, e.g., ECF No. 58-4.)

provided Donovan "with illegal weaponry" such as "flash bang grenades, in case I cause too much trouble." (Id.)   Further, Plaintiff claims he lacked access to PACER, court documents, transcripts, copies of decisions, printer, my own papers . . . due to the hacking and deleting of files as well as the breaking into my car and stealing my bag with my paper copies and USB by the Defendants." (Id. at p. 49.)

Finally, Plaintiff purports to add new claims against "All Defendants." (Id. at pp. 109-111.)   First, Plaintiff alleges, as Count 29, that the Defendants denied him access to a "rehabilitation plan" in violation of the APA and seeks "monetary damages and injunctive relief ruling that this loan is not legally enforceable." (Id. at pp. 109-110.)   Second, in Count 30, Plaintiff "repeats and re-alleges the allegations in this complaint" and alleges "[a]s can be seen in exhibit 20 a FOIA request was made and not fulfilled." (Id. at p. 111.)   Thus, Plaintiff "seek[s] copies of these documents." (Id.)   Third, Plaintiff alleges, as Count 31, that the undersigned denied him due process by: (1) blocking his access to PACER by administrative act rather than by order; and (2) continuing to preside over this case after being named as a defendant. (Id.)   Last, Plaintiff claims, as Count 32, the DOE, DOJ, NYHE, and Bond "released private information [protected by 5 U.S.C. § 552a] to the other Defendants." (Id. at p. 99.)

DISCUSSION

I.   Legal Standard

The Court must liberally construe Plaintiff's pro se TAC.   Indeed, a complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).   "However, the liberal treatment afforded to pro se litigants does not excuse a pro se party from compliance with relevant rules of procedural and substantive law." Wang v. Palmisano, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). Thus, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8.   See, e.g., Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972) (per curium) (affirming dismissal of pro se plaintiff's 88-page, legal size, single spaced complaint that "contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension" for failing to comply with the requirement of Rule 8); Lafurno v. Walters, No. 18-CV-1935, 2018 WL 2766144, at *3 (E.D.N.Y. June 8, 2018) (Seybert, J.) (same).

Moreover, notwithstanding the special solicitude afforded pro se litigants,

> [a] court should dismiss an action as frivolous when
> "the 'factual contentions are clearly baseless,' such as
> when allegations are the product of delusion or
> fantasy." Livingston v. Adirondack Beverage Co., 141
> F.3d 434, 437 (2d Cir. 1998) (quoting Nance v. Kelly,
> 912 F.2d 605, 606 (2d Cir. 1990)). "[A] finding of
> factual frivolousness is appropriate when the facts
> alleged rise to the level of the irrational or the wholly
> incredible." Denton v. Hernandez, 504 U.S. 25, 33
> (1992). A complaint is "'factually frivolous' if the
> sufficiently well-pleaded facts are 'clearly baseless'
> -- that is, if they are 'fanciful,' 'fantastic,' or
> 'delusional.'" Gallop v. Cheney, 642 F.3d 364, 368 (2d
> Cir. 2011) (quoting Denton, 504 U.S. at 33) (affirming
> dismissal of claim "that the most senior members of the
> United States government conspired to commit acts of
> terrorism against the United States" on September 11,
> 2001, and reasoning that "the courts have no obligation
> to entertain pure speculation and conjecture").

Pacheco v. N.S.A., No. 20-CV-5702, 2021 WL 25373, at *2 (E.D.N.Y. 2021). Indeed, "the courts have no obligation to entertain pure speculation and conjecture." Gallop, 642 F.3d at 368.

## II. Application

### A. Recusal is Not Warranted

As a threshold matter, the Court must consider whether it would be appropriate to recuse because it has been named as a defendant. The Court determines that it would not be. A judge must recuse herself if her impartiality might reasonably be questioned. See 28 U.S.C. § 455(a). Section 455 is "evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994). "Recusal is appropriate when a reasonable person, knowing all the facts would question the judge's

impartiality." Canady v. Univ. of Rochester, 736 F. App'x 259, 261 (2d Cir. 2018) (cleaned up).

"Courts that have considered the issue have routinely concluded that a judge is not disqualified merely because a litigant sues or threatens to sue him [or her]." Figueroa v. Trump, No. 92-CV-0401, 2020 WL 5640397, at *2 (N.D.N.Y. Sept. 22, 2020), (citing Gabor v. Seligmann, 222 F. App'x 577, 578 (9th Cir. 2007) ("Such an easy method for obtaining disqualification should not be encouraged or allowed.")); Jones v. City of Buffalo, 867 F. Supp. 1155, 1163 (W.D.N.Y. 1994) ("Section 455 has been repeatedly construed by the courts as not requiring automatic disqualification of a judge [where a litigant names a judge as a defendant].  Otherwise, [Section] 455 could be used as a vehicle to engage in judge-shopping[.]" (internal quotation marks and alterations omitted)).

Here, because the undersigned holds no bias or prejudice towards Plaintiff or his claims and is unaware of any facts or circumstances that would otherwise disqualify it from presiding over this action, the Court declines to recuse.

B.   Claims Against the Undersigned

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." DuQuin v. Kolbert, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing Mireles v. Waco, 502 U.S. 9, 10 (1991));

see also Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994).  "This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff."  Figueroa, 2020 WL 5640397, at *2 (citing Young, 41 F.3d at 51).  "[A] judge is immune only for actions performed in his judicial capacity."  DuQuin, 320 F. Supp. 2d at 41.

Here, Plaintiff seeks to assert a cause of action against the undersigned based on the undersigned's allegedly (1) erroneous decisions, including the November 14, 2018 Consolidation Order and the December 4, 2020 Memorandum and Order dismissing the SAC and granting leave to file the TAC; and (2) blocking his PACER access. (See TAC at pp. 2, 6, 8, 45-49, 111.)

"Rendering legal opinions in judicial orders is precisely within the scope of a judge's responsibility, and judges may be not sued even if, as [P]laintiff[] allege[s], the decisions are erroneous or illegal."  Figueroa, 2020 WL 5640397 at *2; see also Stump v. Starkman, 435 U.S. 349, 362 (1978) ("[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."); Lindsay v. Tierney, No. 18-CV-0840, 2019 WL 132728, at *3 (D. Conn. Jan. 8, 2019) ("The appropriate remedy for an unfavorable decision is an appeal of that decision within the . .

28

. court system.  Relief from unfavorable decisions made by . . .
judges may not, however, be sought through a suit against such
judges in this court.").

Similarly, Plaintiff's conclusory allegation that this
Court blocked his access to PACER is patently false and belied by
the record.  Indeed, by Electronic Order dated March 10, 2021, the
Court instructed that "Plaintiff may access PACER from any computer
with Internet access."  (Mar. 10, 2021 Elec. Order.)  Further,
given Plaintiff's citation to and quotation from this Court's
orders, Plaintiff clearly has access to them.  Accordingly, all
claims asserted against the undersigned are DISMISSED WITH
PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B).

C.    The TAC is Frivolous

The in forma pauperis statute

> accords judges not only the authority to dismiss a claim
> based on an indisputably meritless legal theory, but
> also the unusual power to pierce the veil of the
> complaint's factual allegations and dismiss those claims
> whose factual contentions are clearly baseless.
> Examples of the latter class . . . are claims describing
> fantastic or delusional scenarios, claims with which
> federal district judges are all too familiar.

Denton, 504 U.S. at 32 (quoting Neitzke v. Williams, 490 U.S. 319,
327-29 (1989)).  "[A] finding of factual frivolousness is
appropriate when the facts alleged rise to the level of the
irrational or the wholly incredible, whether or not there are
judicially noticeable facts available to contradict them."  Id. at

33.   The Second Circuit has adopted this analysis even when the plaintiff is not a prisoner or has paid the required filing fee. See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) (noting that "district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources").

"District courts may dismiss a frivolous complaint sua sponte . . . where the claims are found to be fantastic and delusional." McCracken v. Fass, No. 06-CV-3892, 2006 WL 2927162, at *1 (E.D.N.Y. Oct. 10, 2006) (Seybert, J.).   Plaintiff's allegations here -- that numerous people, including the undersigned and Justice Mahon, as well as the Secretary of Education, several employees of the Department of Education, Navient, SRSY, and the NYHE, in addition to police officer Bond -- acted in concert to sabotage Plaintiff's claims and to harass him are wholly unsupported by any facts.

That Plaintiff believes there is an ongoing conspiracy against him is not at issue.  A "[p]laintiff's beliefs -- however strongly he may hold them -- are not facts." Morren v. New York Univ., No. 20-CV-10802, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citing Gallop, 642 F.3d at 368 ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless' -- that is, if they are 'fanciful,'

'fantastic' or 'delusional.'")), report and recommendation adopted, 2022 WL 1665013 (S.D.N.Y. May 25, 2022); Thomas v. Carter, No. 20-CV-8682, 2022 WL 220170 (S.D.N.Y. Jan. 25, 2022) (dismissing pro se complaint as frivolous where plaintiff alleged, inter alia, that defendants "hacked into his personal electronic devices to obtain more of his intellectual property"); Araman v. Real Est. Bd. of N.Y., No. 21-CV-8397, 2022 WL 1443320, at *2 (S.D.N.Y. May 6, 2022) (finding pro se complaint frivolous in light of plaintiff's assertion, inter alia, that "an individual hack[ed] her computer and bank account and delet[ed] text messages from her phone"); Ciltas v. Wang, No. 20-CV-2520, 2020 WL 6146865, at *1 (E.D.N.Y. Oct. 20, 2020) (dismissing pro se complaint as frivolous given plaintiff's assertion, inter alia, that "his electronic devices, including a laptop and smart phone, were hacked"); Sowell v. Jeffries, No. 18-CV-3395, 2018 WL 10879389, at *1 (E.D.N.Y. June 13, 2018) (dismissing claims "that [plaintiff's] personal computer, cellphone and car were hacked and that Congressman [Hakeem] Jeffries failed to take action when she complained to him"); Khalil v. United States, No. 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint where "[p]laintiff allege[d] a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational and wholly incredible").

31

Thus, the Court finds that the TAC is frivolous. Livingston, 141 F.3d at 437.[9]  Accordingly, the TAC is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).  Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) (Korman, J., concurring in part and dissenting in part) ("Courts have both statutory and inherent authority to sua sponte dismiss frivolous suits.").

> D.   The TAC Does Not Cure the Deficiencies in the SAC

Even if the Court did not find Plaintiff's TAC to be frivolous or fanciful, it fails because it does not allege a plausible claim for relief.  For the reasons that follow, Plaintiff did not cure any of the deficiencies noted in the SAC even after being afforded considerable guidance and ample opportunity to do so.

As the Court made clear, Plaintiff was granted "leave to amend his APA claims to address . . . the lack of allegations that he followed the applicable administrative procedures governing the cancellation of his Loans if, in fact, he followed said procedures."  (Order at 25.)  Notably absent from the voluminous TAC are any factual allegations regarding Plaintiff's adherence with the applicable administrative procedures.  (See TAC at pp.

---

[9] In reaching its conclusions, the Court is mindful that "issues of fact, credibility, and the weight of the evidence are not properly considered" at this stage in the proceedings, and the Court has not considered them here.  Morren, 2022 WL 1666918, at *12.

109-110.)[10]   Similarly, the Court concluded that Plaintiff lacked standing to bring his FCRA claim in the absence of any allegations that Navient received notification from a consumer reporting agency regarding the accuracy of information furnished by Navient, as required by Section 1681s-2(b).  (Order at 28.)  The TAC, like the SAC, includes no such allegations.  Moreover, Plaintiff's defamation claim was dismissed in the absence of any facts alleging that the defamatory statement was motivated solely by common law or constitutional malice.  (Order at 39.)  Finding Plaintiff's allegations that Navient's statement was "intentional" or "negligent" were wholly conclusory and unsupported by any factual allegation, the Court dismissed Plaintiff's defamation claim. (Id. at 38-39.)  The TAC does not cure this deficiency either.

The Court also dismissed Plaintiff's intentional infliction of emotional distress claims against Navient and SRSY without prejudice in the absence of factual allegations of conduct that is "extreme" and "outrageous".  (Id. at 41.)  Now Plaintiff alleges, for the first time, that "an unknown person and Scott Bernstein ("Bernstein") of SRSY sexually assaulted myself which included the grabbing of my genitals and sticking a finger in my

---

[10] The TAC includes excerpts from the APA, Plaintiff's summary of the law, and conjecture, but is devoid of any factual allegations. (TAC pp. 109-10.)

rectum after sneaking up on me." (TAC at 508-510.)[11] Plaintiff
also now asserts that unspecified "Defendants made anti[-]Semitic
remakes [sic] and stated that because of my Jewish religion and
Middle Eastern nationality that I 'qualified' for special
treatment, which was harassment, target of fraud, battery, and
sexual harassment." (Id. at 511-13.) Plaintiff also claims that
unidentified "DOE employees stated that because of 9/11 and 'the
Jews' involvement, special precautions were taken against me . .
. due to my heritage." (Id. at 514-16.) Further, Plaintiff
alleges that "SRSY and Navient employees called me a Kike, people
hate the Jews and they can do what they want . . . because no one
believes Jews." (Id. at 517-19.)

        Given that Plaintiff has not alleged that any particular
Defendant has engaged in the claimed extreme and outrageous
conduct, Plaintiff again fails to allege a plausible intentional
infliction of emotion distress claim. It is well established that
Federal Rule of Civil Procedure 8 "requires, at a minimum, that a
complaint give each defendant fair notice of what the plaintiff's
claim is and the ground upon which it rests," and that a complaint
fails to meet that minimum where it "lump[s] all the defendants
together in each claim and provid[es] no factual basis to

---

[11] Curiously, although Plaintiff has added 18 new defendants, he
has not named Bernstein despite Plaintiff's claim of physical
sexual assault.

distinguish their conduct." <u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). Thus, Plaintiff's intentional infliction of emotional distress claims are not plausible and are thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

Similarly, the Court dismissed without prejudice Plaintiff's fraud claim against Navient and SRSY, because Plaintiff did not plausibly allege any of the elements for such claim as required by New York State law, nor did he comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement. (Order at 41-44.) In dismissing these claims, the Court made clear that a plausible fraud claim must include "the identity of the allegedly fraudulent statements, the speaker of those statements, or specify when and where the statements were made" as well as "how any of the alleged statements were fraudulent." (<u>Id.</u> at 43.) Again, Plaintiff's TAC does not even attempt to cure these deficiencies, as the only amendment alleges the fraud claim against "All Defendants." (<u>See</u> TAC 432-47.) Thus, Plaintiff's fraud claims are not plausible and are thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

Likewise, the Court dismissed without prejudice Plaintiff's tortious interference with a contract claim under New York State law against the Non-Federal Defendants, because his allegations that the Non-Federal Defendants tortiously interfered

with his contract with the DOE "lack[ed] the specificity required to state a claim for tortious interference with a contract." (Order at 49.)   Rather than attempt to allege any new facts in support of his tortious interference claim, Plaintiff simply repeated the same allegations as set forth in the SAC and added that these claims are against "All Defendants".   (TAC at ¶¶ 87-98.)   Thus, as is readily apparent, Plaintiff's tortious interference with contract claims are not plausible and are thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

Finally, the Court dismissed Plaintiff's conspiracy claim, brought pursuant to 42 U.S.C. § 1985(2), in the absence of any allegations suggesting that there was a "meeting of the minds" among any of the Defendants or that a class-based discriminatory animus motivated the Non-Federal Defendants' actions.   (Order at 50-52.)   The TAC includes no new allegations in support of a conspiracy claim.   Again, Plaintiff simply amended this claim as against "All Defendants."   Thus, Plaintiff's conspiracy claim is not plausible and is thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

III. Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Matima v. Celli,

228 F.3d 68, 81 (2d Cir. 2000)).  Thus, a pro se action "should not be dismissed without granting leave to replead at least once when such a reading 'gives any indication that a valid claim might be stated.'" Barnes v. United States, 204 F. App'x 918, 919 (2d Cir. 2006) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).  However, even where a plaintiff is proceeding pro se, "leave to amend a complaint may be denied when amendment would be futile." Nielsen, 746 F.3d at 62 (internal citation and quotation marks omitted).

     In this case, Plaintiff has already been given two chances to amend his pleading.  This Court's Memorandum and Order dismissing the SAC made abundantly clear the deficiencies in Plaintiff's claims, and, in dismissing such claims without prejudice and with leave to amend, set forth clear guidance as to what was needed in order to sufficiently allege a plausible claim. (See Order at 25, 28, 39, 44, 50, 52, 55-56.)  Further, the Court limited the scope of any amended complaint.  (Id. at 55-56.)

     In filing this 143-page TAC against 18 new Defendants. Plaintiff disregarded the Court's instruction and, rather than attempt to cure the noted deficiencies, Plaintiff largely re-filed those claims albeit this time as against "All Defendants."  Enough is enough.  A careful reading of the TAC reflects that, notwithstanding the extraordinary prolixity, there are simply no facts to support Plaintiff's claims.  And, given the fantastic

nature of the new allegations, it is apparent that Plaintiff's action is frivolous and malicious. Thus, leave to amend would be futile and, accordingly, LEAVE TO FURTHER AMEND IS DENIED.

<u>CONCLUSION</u>

For the reasons stated, **IT IS HEREBY ORDERED** that Plaintiff's **TAC IS DISMISSED IN ITS ENTIRETY, WITH PREJUDICE, PURSUANT TO 28 U.S.C. § 1915(e)(2)(B).**

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore <u>in forma pauperis</u> status is DENIED for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED that** the Clerk of the Court shall mail a copy of this Order to the <u>pro se</u> Plaintiff; and

IT IS FURTHER ORDERED that the Clerk of the Court shall enter JUDGMENT and mark this case CLOSED.

**SO ORDERED.**

/s/ Joanna Seybert
JOANNA SEYBERT, U.S.D.J.

Dated:     July  1 , 2022
           Central Islip, New York